[Crim. No. 7280. In Bank. Aug. 5, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. NORMAN ARTHUR WHITEHORN, Defendant and Appellant.

Charles V. Weedman for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Plaintiff and Respondent.

GIBSON, C. J.—Norman Whitehorn and Charles Hummel were charged with the murder of Mrs. Angela Gums. Whitehorn admitted a prior conviction of kidnaping and rape. The jury found both defendants guilty of first degree murder and determined that Whitehorn should suffer the death penalty and Hummel life imprisonment. Whitehorn's motion for a new trial was denied, and his appeal is before us automatically under subdivision (b) of section 1239 of the Penal Code. Hummel has not appealed.

Mrs. Gums' death was due to strangulation, and there were a number of scratches on her body, some of which in the opinion of the autopsy surgeon occurred shortly before she died. At the time of her death she was 37 years old, appellant was 24, and Hummel was 18. Appellant and Hummel were arrested after Hummel, who was a private in the Marine Corps, had told a marine sergeant that he and appellant were implicated in the death of Mrs. Gums. The prosecution's evidence against appellant consisted mainly of statements freely and voluntarily made by him to law enforcement officers following his arrest.

On the night of April 21, 1962, appellant met Hummel, whom he had known for several weeks, and they went to a restaurant in Hollywood, where about 2:30 a.m. they met Mrs. Gums for the first time. About a half hour later she accepted their invitation to drive her home in appellant's car which was parked nearby. Appellant drove near her house and then continued on to the North Hollywood hills where he parked the car. Appellant there had intercourse with Mrs. Gums in the presence of Hummel. The act was not

free and voluntary on her part although she did not resist "to any great extent." They then drove to a place in the vicinity of Santa Monica where appellant tore off all Mrs. Gums' clothing and again had intercourse with her in the car while Hummel was present. Although she did not physically resist him on this occasion, she protested and "very possibly" was in fear of him. Later, while appellant embraced her in such a manner that her arms were pinned to her body, Hummel strangled her with a necktie. As they drove away, they heard Mrs. Gums groaning and Hummel again strangled her. When she was no longer breathing, they dropped her body over a fence near the road.

Appellant, testifying in his own behalf, said that both acts of intercourse were free and voluntary on Mrs. Gums' part, that when he previously made statements to the contrary he meant that she did not willingly consent to have intercourse while Hummel was in the car, and that he and Mrs. Gums had torn off all her clothing "in the heat of passion." He further testified that, although he knew what was happening when Hummel had the necktie around her throat, he did not assist him in any way.

Hummel testified that he was drunk that night, and that although he did not remember putting the necktie around Mrs. Gums' throat he "must have been" the one who did so. He said that he recalled holding the tie which was around her neck and "relieving the pressure from around her throat." He also testified that while they were parked at the first location he was in the back seat of the car and appellant and Mrs. Gums were in the front seat, that he saw appellant's trousers coming down and turned away, and that he did not hear her remonstrate with appellant. He said that after they parked the second time he lay down in the front seat of the car and did not witness the act of intercourse between appellant and Mrs. Gums, who were in the back seat.

The evidence is clearly sufficient to show appellant's guilt and he makes no assertion to the contrary, but complains that the court erred in its rulings on the admission of evidence and in giving instructions to the jury.

█ The trial court received evidence of a number of statements made by Hummel to law enforcement officers in appellant's absence. Before the evidence was admitted the jury was told that it would be received as against Hummel only. Later, while Hummel was being examined concerning his prior statements, the court informed the jury that the evi-

dence could be considered so far as it might be relevant against Hummel. At the conclusion of the trial the jury was correctly instructed with respect to extrajudicial statements made by one defendant in his codefendant's absence. We are satisfied that, contrary to appellant's contention, the court made it sufficiently clear that this evidence was received as against Hummel only.

Evidence was also admitted of an accusatory statement made by Hummel during a joint interview of the two defendants by sheriff's deputies after appellant's arrest. Hummel said that appellant put a tie around Mrs. Gums' throat and that she "started choking" and then went completely limp. Appellant attempted to interrupt the questioning and was told by one of the officers to wait until Hummel had finished and that he could then be heard. Later when appellant said he disagreed with some of the things related by Hummel he was again told to wait until Hummel completed his story. When Hummel had finished, appellant said to him, "I think you have a worse memory than I do." Appellant was then asked whether or not Hummel had told the truth, and he replied, "I don't care to venture to say whether or not he's told the truth until I think about it for a while." When asked whether Hummel's story was basically true, he replied, "Well, I don't care to answer that question, just right now, until I have a chance to ask a few questions myself," and he later said, "I just can't understand why he didn't tell the truth. I have one thing very definite to say, I murdered nobody, I killed nobody."

After the evidence of the accusatory statement was admitted, the court was asked to instruct the jury that statements by Hummel applied only to him, and the jury was informed that the evidence was not binding on appellant unless he admitted what Hummel said was correct. At the conclusion of the trial the court gave an instruction substantially in the form of one approved by this court in *People* v. *Davis*, 48 Cal.2d 241, 250-251 [309 P.2d 1].[1]

[1] The instruction given by the court read: "If you should find from the evidence that there was an occasion when a defendant, under conditions which fairly afforded him an opportunity to reply, failed to make denial or made false, evasive or contradictory statements, in the face of an accusation, expressed directly to him or made in his presence, charging him with the crime for which he now is on trial or tending to connect him with its commission, and if you should find that he heard the accusation and understood its nature, the circumstance of his silence may be considered against him as indicating an admission that the accusation thus made was true. Evidence of such an accusatory statement is not

262

█ In general, an accusatory statement and the defendant's response thereto may be received where the truth of the accusation was admitted or where, under circumstances calling for a denial, there was silence or equivocal or evasive answers indicating a consciousness of guilt or acquiescence in the truth of the statement. (*People* v. *Chavez*, 50 Cal.2d 778, 790 [329 P.2d 907]; *People* v. *Davis, supra,* 48 Cal.2d 241, 249-250.) Such evidence is not admissible where the defendant has made a flat denial (see *People* v. *Simmons*, 28 Cal.2d 699, 712 [172 P.2d 18]), but if a denial is coupled with other conduct of the accused which is of evidentiary importance, such as where false and evasive replies are made together with a denial, the evidence may be received (*People* v. *Romano*, 197 Cal.App.2d 622, 635 [17 Cal.Rptr. 399]; *People* v. *Megladdery*, 40 Cal.App.2d 748, 784 [106 P.2d 84]).

█ Although appellant denied killing Mrs. Gums, some of his responses were evasive, and we are satisfied that the admission of the evidence concerning the accusatory statement did not constitute prejudicial error. The instructions given to the jurors made it clear that they were to disregard the evidence unless they found appellant admitted the truth of the statement by his conduct, and even if it be assumed that they disregarded these instructions and took the accusatory statement into consideration without first finding such conduct on his part there is no substantial likelihood in the light of the record as a whole that they would have believed he was the one who put the tie around Mrs. Gums' neck and choked her. The testimony of Hummel, as well as that of appellant, was to the effect that it was Hummel who choked her.

█ It is contended that the trial court erred in admitting over appellant's objection testimony concerning a prior offense. A witness called by the prosecution testified that in 1957 she and another girl accepted a ride with appellant and another boy who had invited them to go to a restaurant. Instead of taking them there, appellant drove toward the mountains and after parking in an orange grove he had intercourse with her twice in the car. She said that he ripped off her clothes until she was nude and that he had a knife

received for the purpose of proving its truth, but only to explain the conduct of the accused in the face of it; and unless you should find that his conduct at the time indicated an admission that the accusatory statement was true, you should entirely disregard the statement.''

and she was afraid he would kill her. The evidence was properly admitted. Under one of the prosecution's theories the rape of Mrs. Gums was a material element of the crime of murder of the first degree, and in view of the striking similarities between the present offense and the one committed in 1957 the evidence regarding the prior offense was relevant on the question of a common scheme or plan to commit rape. In each instance appellant had a male companion with him, had intercourse with the woman twice, and ripped off the woman's clothing until she was nude. Also both women had been invited by appellant to go to one destination in his car but instead had been taken elsewhere, and intercourse occurred in each case in a parked automobile.

Appellant also complains of the admission of certain rebuttal testimony over his objection, and in this connection he relies on cases such as *People* v. *Robinson,* 179 Cal.App.2d 624, 629 et seq. [4 Cal.Rptr. 50], which hold that the prosecutor has no right to withhold a material part of his evidence and offer it after the defense has rested. Here, as part of the prosecutor's case in chief, the victim of the 1957 rape testified concerning that offense. Appellant thereafter testified that he had not threatened the woman with violence or used force and that he had not intended to frighten her, although he admitted that he had been convicted of the rape. A Mr. Borror, who was subsequently called in rebuttal by the prosecutor, testified over objection that appellant had told him he intended to frighten the woman. It was only after appellant denied having used force or threats or having intended to frighten the woman that Borror's testimony became of any possible importance, and after appellant made the denial, the testimony of Borror was properly admitted to impeach appellant's testimony and to support the prosecutor's case in chief on a point put in dispute by appellant. (Cf. *People* v. *Harrison,* 59 Cal.2d 622, 629-630 [30 Cal.Rptr. 841, 381 P.2d 665].)

It is further argued that the court erred in granting the prosecution's motion to strike all the testimony of a defense witness, Mrs. Stalew, which, assertedly, was relevant on the question of whether Mrs. Gums was unchaste. Mrs. Stalew, who lived in the same apartment house as Mrs. Gums, testified that Mrs. Gums frequently came home during the early morning hours accompanied by a man and that on such occasions there was laughing and talking in Mrs. Gums' apartment. This testimony was of little, if any, evidentiary value, and since other witnesses testified that Mrs. Gums had

a reputation of being an unchaste woman, appellant was not prejudiced by the ruling striking the testimony of Mrs. Stalew.

█ Finally, it is contended that the court erred in refusing to give the following instruction requested by appellant: "Murder which is committed in the perpetration or attempt to perpetrate forcible rape is murder of the first degree, whether the murder was intentional, unintentional or accidental. The State must prove a defendant guilty beyond a reasonable doubt of forcible rape before this rule may be applied; and, in addition, it is necessary to show that death ensued in consequence of the forcible rape. A mere coincidence between the alleged forcible rape and the death is not sufficient."

█ Where it is claimed that a murder is of the first degree on the theory that it was "committed in the perpetration" of one of the felonies designated in section 189 of the Penal Code, the defendant is entitled, upon request, to a specific instruction directing attention to the necessity of proving the felony beyond a reasonable doubt even though a general instruction on reasonable doubt has been given. (See *People* v. *Granados,* 49 Cal.2d 490, 495-496 [319 P.2d 346]; cf. *People* v. *Kane,* 27 Cal.2d 693, 698-702 [166 P.2d 285].) █ The proposed instruction, however, erroneously stated that before the felony-murder rule may be applied it must be shown that death ensued "in consequence of the forcible rape." Section 189 of the Penal Code has been construed as not requiring a strict causal relation between the felony and the homicide, and the homicide is committed in the perpetration of the felony if the killing and the felony are parts of one continuous transaction. (*People* v. *Mason,* 54 Cal.2d 164, 168-169 [4 Cal.Rptr. 841, 351 P.2d 1025]; *People* v. *Chavez,* 37 Cal.2d 656, 669-670.) Statements of the type contained in the proposed instruction are misleading and should not be used in giving instructions on the subject. Any language in *People* v. *Harrison,* 176 Cal.App.2d 330, 335 [1 Cal.Rptr. 414], which could be understood as being in conflict with the views expressed herein is disapproved.

█ The question remains whether there was any duty upon the part of the court to correct the proposed instruction by striking the erroneous portion. █ As a general rule a court is not required to correct improper instructions offered by the parties (*People* v. *Thomas,* 58 Cal.2d 121, 130 [23 Cal.Rptr. 161, 373 P.2d 97]; *People* v. *Davis,* 135 Cal.

162, 165-166 [67 P. 59]), but this rule should not be given unlimited application, and the failure of the court to give an adequate instruction will not necessarily be excused where the defect is an obvious one that can be easily corrected. (*People* v. *Hatchett,* 63 Cal.App.2d 144, 153 [146 P.2d 469]; see *People* v. *Kane, supra,* 27 Cal.2d 693, 699.)

▮ It is particularly desirable that this should be done where the life of the accused is at stake and it would have been simple to omit the defective part of appellant's proposed instruction and give the remainder, but we cannot say that under the circumstances present here the failure to do so constituted prejudicial error. The court gave instructions which to a large extent covered the subject matter of the one proffered by appellant. It not only gave a general instruction as to reasonable doubt and one setting forth the felony-murder rule as applied by the decisions of this court but also instructed the jury that if there was a reasonable doubt as to whether the murder was of the first or the second degree it must give appellant the benefit of that doubt and return a verdict fixing the murder as of the second degree. From the instructions given, considered together, the jury must have understood that the requirement of proof of guilt beyond a reasonable doubt applies not only to proof of guilt of homicide but also to proof of circumstances which show that the murder was of the first degree, namely, to the proof that the murder was committed in the perpetration of forcible rape. In view of the entire record, including appellant's admissions, it does not appear reasonably probable that a result more favorable to him would have been reached had a specific instruction been given directing attention to the necessity of proving forcible rape beyond a reasonable doubt.

The same jury that found appellant guilty fixed his punishment. It is not claimed that there was any error relating solely to the penalty issue, and we are satisfied from an examination of the record that none occurred.

The judgment is affirmed.

Traynor, J., Schauer, J., McComb, J., Peters, J., Tobriner, J., and Peek, J., concurred.