[Crim. No. 8755. Second Dist., Div. One. Dec. 16, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. WALTER GEORGE CHARLES, Defendant and Appellant.

Mel Pierovich, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Gordon Ringer, Deputy Attorney General, for Plaintiff and Respondent.

WOOD, P. J.—Defendant was accused in count 1 of attempted robbery; in count 2 of kidnaping; in count 3 of rape; and in count 4 of kidnaping for the purpose of robbery. In a jury trial he was convicted on the first three counts, and was acquitted on the last count. He appeals from the judgment.

Martha, the victim of the alleged offenses, testified that: On May 15, 1962, about 10:15 p.m., after she had alighted from a bus on Western Avenue near 47th Street in Los Angeles, and was walking toward her home which was about four blocks from the bus stop, a man came up back of her, told her to keep moving, and to give her money to him. She became frightened and dropped her books and purse. While she was picking up those things the man was pointing a gun at her. Then, as the man followed her, he ordered her to go into and along three alleys and finally into a place between two garages where he again demanded money. When she replied that she had no money, he said he would have sexual intercourse with her. She complied with his order that she undress, and he had sexual intercourse with her. He asked her many questions about her school, home, and various things. She said that she went to school every night. He read some poetry he had written—he said he was a poet and a beatnik. He had a heavy beard, sideburns, and woolly hair. That man was the defendant Charles. In order to get released so that she could go home, she agreed to meet him the next evening at 6th Street and Broadway—he said that he would be carrying a briefcase. As they were leaving the place, he put the gun under his belt or waistband. They walked together for a few blocks, and then he went away. She arrived home about 12:30 a.m., told her husband what had happened, and he called the police. The next day she went with the officers to the place between the two garages, where they found a stocking, glove, and lipstick which she had left there.

The husband of the victim testified that: The next night,

about 10 o'clock, he went to the vicinity of 47th Street and Western Avenue (the place where the victim had gotten off the bus the preceding evening). While he was there he saw a man who appeared to be the man who had been described by the victim. Thereupon he called the police, and when Officer Najera arrived, he (husband) pointed out the man.

Officer Najera testified that: On May 16, about 11 p.m., when he went to the vicinity of 47th Street and Western Avenue in response to a call, he observed that the defendant who was then going between two vehicles took something from his waistband or pocket. After he arrested the defendant, he (officer) went to the place between the two vehicles and found a toy gun (exhibit 1, which the victim identified as the gun which had been pointed at her). Defendant said that it was not his gun. When he was searched at the police station, the officers found a change-of-address card on which there was the following notation: "This is a holdup. Give me all the money and you won't get hurt." Defendant said that he had found the card. When he was asked if the gun was his, he said: "Well, it is mine. If you say it is mine, it is mine."

Officer Logue testified that: In a conversation with defendant at the police station on May 17, the defendant said he did not own the gun; he did not know anything about it; he had found the change-of-address card; and he was not in the area of 47th and Western on May 15. In a conversation at the same place on May 18, the defendant said that the gun belonged to him; and that he did not rob the victim. When the officer asked whether defendant raped her, he said how do you know that she was not a prostitute. Then the officer said that he had talked with defendant's cellmate, Floyd Austin, who said that defendant had told him that defendant had approached the victim on 47th Street, forced her to go into an alley, had tried to rob her, and had raped her. That defendant replied: "He must be a police operator."

Defendant testified: That on May 15, about 10 p.m., as he was coming out of a night club near 47th and Western, the victim, who was standing outside the club, asked him if he would like to have a date with her. After agreeing upon the price of the date, they went across Western Avenue and entered the back seat of a car, and then a man who was in the front seat drove the car into the alley. Defendant and the victim got out of the car and went between two garages where he tried unsuccessfully to have sexual intercourse with

her. When he refused to pay her, she said she would call her "old man." Then she called the driver of the car, who said that defendant was going to pay before he left the place. The defendant took the toy gun from his pocket and told the driver to step aside. Then defendant walked away. On cross-examination, defendant said that he had the card in his pocket, that he had painted the toy gun black, and he intended to commit a robbery.

Floyd Austin, called as a witness by defendant, testified that he had been in a jail cell with defendant; that he did not tell Officer Logue that defendant had informed him that defendant had robbed or raped the victim; that he did not tell Officer Logue about a conversation with the defendant regarding the charge of robbery or rape or kidnaping. On cross-examination, he said that he did not tell Deputy District Attorney Brown (the deputy who tried this case) that he (witness) had "made" these statements" to Officer Logue; that he (witness) had been convicted of burglary in 1955.

One rebuttal Deputy District Attorney Brown testified that on August 21, 1962, he had a conversation in the courtroom with Austin, who had been subpoenaed as a witness for the People in the present case; in that conversation he asked Austin whether he had told Officer Logue that defendant had said that defendant committed the robbery and rape as charged herein; and that Austin replied that he had related this information to the officer but the information was not true, that defendant had not confessed the crimes but Austin had said this to Officer Logue in the hope that they would give Austin some benefit in the case pending against him. The deputy testified further that after that conversation he released Austin from the subpoena.

In rebuttal, Officer Logue testified in substance the same as he had theretofore testified regarding his conversation with Austin. He testified further that nothing was said in the conversation relative to the officer's helping Austin in his case; and that Austin said he would willingly testify against defendant.

 Appellant contends that he was denied a fair trial in that: (1) the court erred in receiving the testimony of Officer Logue relating to the accusatory statement that appellant had told Austin (his cellmate) that he robbed and raped the victim; and (2) the court abused its discretion in permitting that officer, in rebuttal, to repeat his testimony and thereby unduly emphasize the accusatory statement. He ar-

gues to the effect that since he was in custody at the time he was confronted with the accusatory statement, the testimony of Officer Logue as to the statement and as to defendant's response thereto should have been stricken from the evidence. He argues further that the effect of the several references to the accusatory statement was tantamount, in the estimation of the jury, to the introduction of a confession.

"In general, an accusatory statement and the defendant's response thereto may be received ... where, under circumstances calling for a denial, there was silence or equivocal or evasive answers indicating a consciousness of guilt or acquiescence in the truth of the statement." *(People* v. *Whitehorn,* 60 Cal.2d 256, 262 [32 Cal.Rptr. 199, 383 P.2d 783].) Evidence of such statement and of the accused's conduct "is admissible on the theory that the natural reaction of an innocent man would have been to make a denial and that, therefore, his failure to deny may be regarded as giving rise to an inference of acquiescence in the truth of the statement or as indicating a consciousness of guilt." *(People* v. *Abbott,* 47 Cal.2d 362, 373 [303 P.2d 730].) "Where the trial judge determines that such an inference may be drawn, the statement is then admitted, not as substantive evidence in proof of the fact asserted but merely as a basis for showing the reaction of the accused to it." *People* v. *Simmons,* 28 Cal.2d 699, 712-713 [172 P.2d 18].) The fact that a defendant was in custody at the time he was confronted with an accusatory statement "does not of itself make the evidence inadmissible." *(People* v. *Davis,* 48 Cal.2d 241, 249 [309 P.2d 1].)

In the present case the accusatory statement (related by Officer Logue to defendant) was that defendant's cellmate had told the officer that defendant said that he (defendant) had forced the victim into an alley, had tried to rob her, and had raped her. Thereupon, the defendant said: "He must be a police operator." The court did not err in receiving the evidence regarding the accusatory statement and the defendant's response thereto.

The further contention that the court abused its discretion in permitting Officer Logue, on rebuttal, to repeat his testimony given during the People's case in chief is not sustainable. When he first testified regarding the accusatory statement he limited his testimony to the conversation he had *with defendant* as to what Austin (the cellmate) had said. Thereafter, Austin as a witness called by defendant denied

that he had told Officer Logue about a conversation with defendant. In view of that testimony by Austin, the prosecution was entitled to call Officer Logue, on rebuttal and for the purpose of impeachment, to testify as to his conversation with Austin. It is reasonable to assume that the officer, in relating the conversation he had with Austin, would necessarily include what he had theretofore told the defendant that Austin had said. In addition to the repeated part of the conversation, the officer testified that Austin said he would willingly testify against defendant. Under such circumstances, it is apparent that any emphasis of defendant's admission (by such repetition) was caused by Austin's denial of the officer's testimony. The court did not err in receiving the officer's testimony on rebuttal.

The court did not err in receiving the testimony of the deputy district attorney. As above stated, Austin had denied the statements attributed to him by the officer. The deputy had subpoenaed Austin as a witness for the People, but while the deputy was interviewing him in the courtroom, prior to calling him to the witness stand, Austin said that he had made the statements to the officer but the statements were not true. Under such circumstances, the testimony of the deputy was properly received in rebuttal of the testimony of Austin that he had not made the statements to the officer. The deputy's testimony was admissible as evidence indicating that officer Logue acted in good faith in relating to defendant the accusatory statement of Austin.

The evidence was sufficient to support the judgment. The defendant was accorded a fair trial.

The judgment is affirmed.

Fourt, J. and Lillie, J., concurred.