[Crim. No. 17201. Second Dist., Div. Four. Aug. 19, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE EDWARD WILLIAMS, Defendant and Appellant.

## COUNSEL

Ivan M. Hoffman, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Howard J. Schwab, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

DUNN, J.—By grand jury indictment, Douglas Turnbeau, George Jordan and appellant Williams were accused of murdering Brian Clay. Appellant's trial was severed from that of the others; he was tried by a jury, found guilty of second degree murder (Pen. Code, §§ 187, 189) and now appeals. He makes five contentions.

## I

■   Appellant first contends his conviction rests solely upon the uncorroborated testimony of Turnbeau, an accomplice, in violation of Penal Code, section 1111.[1] We disagree.

At approximately 9:15-9:30 p.m. the night of December 9, 1968, Brian Clay left his fraternity house on 28th Street, near the University of Southern California campus, to go to the car of a fraternity brother. The automobile was parked at the curbing near the intersection of West 28th and South Hoover Streets in Los Angeles. Defendant Turnbeau was granted immunity pursuant to Penal Code, section 1324. He testified that he, Jordan and appellant were walking up 28th Street when the victim was seen coming from the fraternity house and going toward the parked car. Appellant pulled an "instrument" (later identified as a two-edged knife) from his waistband or trousers' pocket and ran forward. He reached over and grabbed Clay and was heard saying something about "keys" and Clay saying "no." Appellant then stabbed Clay and ran back toward Turnbeau and Jordan, holding a knife in his hand.

On this evidence, Turnbeau would not be an accomplice. He was present at the time of the homicide, but had nothing to do with it except to witness it. Although Turnbeau was indicted for murder along with appellant, such fact would not, alone and as a matter of law, establish him to be an accomplice. *People* v. *Lawson* (1952) 114 Cal.App.2d 217, 220 [249 P.2d 850]; *People* v. *Johns* (1945) 69 Cal.App.2d 737, 747-748 [160 P.2d 102]. It is true that other evidence offered would, if believed, have established that status. The trial court instructed the jury on the law of accomplices, properly leaving Turnbeau's status for the jury to determine. The jury very well may have concluded, on the evidence before it, that Turnbeau was not an accomplice, making Penal Code, section 1111 inapplicable.

Even if Turnbeau were an accomplice, however, there was ample corroborative evidence. *People* v. *Henderson* (1949) 34 Cal.2d 340 [209 P.2d 785]; *People* v. *Trujillo* (1948) 32 Cal.2d 105, 110-112 [194 P.2d 681]. For example, Mrs. Basse saw the crime occur, though not realizing it was a stabbing at the time. Thus, she saw three young Negroes by the car, one at either end and one leaning inside. The one leaning inside backed out and walked to the corner. A fourth young man was then seen to back out

---

[1]Penal Code, section 1111 reads: "A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."

of the car holding his chest, walk up the steps of the fraternity house and collapse. As he had emerged from the car the three Negroes had looked back, saw him and started to run. Mrs. Basse could not positively identify any of the three but there was other evidence from which it was reasonable to infer that appellant was one of them. Additional corroborative evidence is in the record.

Appellant argues that Turnbeau's testimony should, in any case, have been rejected as inherently improbable because of inconsistencies and impeaching evidence. However, the weight to be given testimony is for the jury to determine in the first instance, and for the trial court in the second instance, which it later did when it denied appellant's motion for a new trial. We cannot now reweigh it.

## II

Appellant next contends the trial court erroneously admitted evidence that appellant brandished a kitchen knife later the night of the murder. Evidence showed that, after the stabbing, Turnbeau and Jordan ran. Turnbeau started to run in the direction of his home, but stopped off at "Frank's house." Frank said appellant was upstairs. Appellant soon came down. They talked awhile and appellant then went to the refrigerator, got out some hamburger and started cooking it. Frank said he should not do this, as the meat belonged to someone else. Another man soon entered the apartment and appeared upset by the incident. He told appellant to leave. Appellant "got mad and he grabbed a knife and he approached this guy that was at the door." Turnbeau stepped between them; he and appellant left soon thereafter.

This testimony was admitted after a discussion with counsel at the bench. The court concluded the evidence was admissible on the issue of "intent," and thereafter advised the jury it was received for a limited purpose relating to appellant's state of mind. The court gave the jury a formal instruction concerning it at the trial's conclusion.[2]

---

[2]"Evidence was offered in this case for the purpose of showing that the defendant took part in another incident other than the one of which he is accused and for which he is on trial in this action, that is, the so-called hamburger incident.

"Such evidence was received for a limited purpose only: not to prove distinct offenses or continual criminality, but for such bearing, if any, as it might have on the question whether the defendant is innocent or guilty of the crime charged against him in this action.

"You are not permitted to consider that evidence for any other purpose, and as to that purpose you must weigh such evidence as you do all other in the case.

Respondent argues that evidence of the subsequent crime was admissible under Evidence Code, section 1101, subdivision (b).[3]

■ Evidence of a second crime need not be excluded merely because the second crime occurred after the crime charged. *People* v. *Griffin* (1967) 66 Cal.2d 459, 464-465 [58 Cal.Rptr. 107, 426 P.2d 507]. Respondent relies upon such cases as *People* v. *Kelley* (1967) 66 Cal.2d 232, 238-245 [57 Cal.Rptr. 363, 424 P.2d 947]; *People* v. *Whitehorn* (1963) 60 Cal.2d 256, 262-263 [32 Cal.Rptr. 199, 383 P.2d 783]; *People* v. *Covert* (1967) 249 Cal.App.2d 81, 83-89 [57 Cal.Rptr. 220]; *People* v. *Adamson* (1964) 225 Cal.App.2d 74, 76-79 [36 Cal.Rptr. 894]; and *People* v. *Malloy* (1962) 199 Cal.App.2d 219, 229-234 [18 Cal.Rptr. 545] (disapproved on other grounds in *People* v. *Kelley, supra*). ■ While we are not entirely convinced that the circumstances surrounding the "hamburger incident" make evidence of it admissible under the rules discussed in these cases, we are satisfied that any error in admitting the evidence, if error it was, does not fall within the rule of prejudice stated in *People* v. *Watson* (1956) 46 Cal.2d 818, 835-838 [299 P.2d 243]. The chief problem to be resolved by the trial was the identity of appellant as Clay's assailant. The evidence was not admitted to establish an identification but to show intent, an issue not greatly in dispute. The evidence, both direct and circumstantial, fastening guilt upon appellant was convincing.

## III

■ Relying upon *People* v. *Bassett* (1968) 69 Cal.2d 122 [70 Cal.Rptr. 193, 443 P.2d 777], appellant asserts this court should re-evaluate the evidence and reverse his conviction because the evidence is insubstantial. We disagree. Appellant gives no reason for this assertion and the mere fact that Penal Code, section 1181, subdivision 6, contains authority for this court to act is no reason for doing so. *Bassett* is not in point at all.

## IV

■ Appellant contends the M'Naghten rule of insanity is wrong and that the trial court improperly applied it. This claim is far-fetched. Appel-

"The value, if any, of evidence of the so-called hamburger incident depends on whether or not it tends to show—

"That the defendant entertained the intent which is a necessary element of the alleged crime for which he now is on trial; or

"That the defendant was familiar with or possessed the means alleged to have been used in the commission of the crime of which he is accused in this action."

[3]Evidence Code, section 1101, subdivision (b) reads: "(b) Nothing in this section prohibits the admission of evidence that a person committed a crime . . . when relevant to prove some fact (such as . . . intent . . .) other than his disposition to commit such acts."

lant had pled "not guilty" and "not guilty by reason of insanity." Pursuant to Penal Code, section 1027, the court appointed psychiatrists to examine him. They reported appellant to be presently sane (Pen. Code, § 1368), also reporting on his sanity at the time of the alleged offense. Appellant personally, and through counsel, withdrew his plea of not guilty by reason of insanity. The foregoing is all that appears in the record before us and nothing indicates the court did, or had any occasion to, apply the M'Naghten rule.

However, and assuming intended application of that rule caused appellant to withdraw his plea, the rule in M'Naghten is the rule accepted in California. *People* v. *Nicolaus* (1967) 65 Cal.2d 866, 879 [56 Cal.Rptr. 635, 423 P.2d 787]; *People* v. *Wolff* (1964) 61 Cal.2d 795, 803 [40 Cal.Rptr. 271, 394 P.2d 959]; *People* v. *Flanagan* (1969) 275 Cal.App.2d 966, 968-969 [80 Cal.Rptr. 408]; *People* v. *Foster* (1969) 271 Cal.App.2d 763, 769 [79 Cal.Rptr. 397].

## V

Lastly, appellant makes complaint of the trial court's instructions to the jury.

██ His first contention is based upon *People* v. *Hall* (1964) 62 Cal.2d 104 [41 Cal.Rptr. 284, 396 P.2d 700]. In that case, the Supreme Court reversed a murder conviction resulting from a nonjury trial. In concluding the evidence was insufficient, the court stated (p. 112): "To justify a criminal conviction, the trier of fact must be reasonably persuaded to a near certainty. The trier must therefore have reasonably rejected all that undermines confidence." Appellant submitted an instruction incorporating this and argues it should have been read to the jury. However, the trial court fully instructed the jury in the language of Penal Code, section 1096. Penal Code, section 1096a states: "In charging a jury, the court may read to the jury section 1096 of this code, and no further instruction on the subject of the presumption of innocence or defining reasonable doubt need be given." That the Supreme Court did not intend in *Hall* to question the rule is clear from reviewing *People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321]; *People* v. *Bassett, supra,* 69 Cal.2d at p. 139; *People* v. *Caruso* (1968) 68 Cal.2d 183, 190-191 [65 Cal.Rptr. 336, 436 P.2d 336]. Also see: *People* v. *Hughes* (1969) 268 Cal.App.2d 796, 800-801 [74 Cal.Rptr. 107] and *People* v. *Tober* (1966) 241 Cal.App.2d 66, 72 [50 Cal.Rptr. 228].

██ Finally, appellant asserts the trial court erred in instructing on first degree murder (*i.e.,* felony murder), contending the evidence was in-

sufficient to support it. We need not consider the point or review the evidence, inasmuch as the jury found appellant to be guilty of second degree, not first degree, murder so that he cannot have been prejudiced.

The judgment is affirmed.

Files, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied August 31, 1970, and appellant's petition for a hearing by the Supreme Court was denied October 28, 1970.