128 Cal.App.3d 564 (1982)
180 Cal. Rptr. 440
THE PEOPLE, Plaintiff and Respondent,
v.
GEORGE ATKINS, Defendant and Appellant.
Docket No. 20810.
Court of Appeals of California, First District, Division One.
February 9, 1982.
*565 COUNSEL
Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Allan H. Keown, Deputy State Public Defender, for Defendant and Appellant.
George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, *566 Herbert F. Wilkinson and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
RACANELLI, P.J.
Defendant was convicted by jury verdict of the crimes of first degree murder and second degree burglary.[1] Following denial of postconviction motions, he was sentenced to state prison for the term prescribed by law for first degree murder (25 years to life) with the sentence on the burglary conviction stayed pending completion of sentence on the murder conviction. On appeal defendant claims prejudicial error as a result of the admission of incriminating evidence seized pursuant to an invalid search warrant and instructional error. By supplemental brief, defendant further argues that the felony-murder rule, within the context of Penal Code section 189, should be repudiated on both policy and constitutional grounds. We consider defendant's respective claims in a sequence convenient to our discussion.

Facts
Shortly after 6 p.m. on April 21, 1979, the victim, Sara Thomas, a 76-year-old diminutive English woman, was discovered lying unconscious on the floor of her room in the Somerton Hotel, a residential hotel accommodating long-term and transient guests. The severely beaten victim was found with a telephone cord wrapped around her arm and a crescent shaped wound was observed on her head which was consistent with the configuration of the telephone receiver. The victim died a few hours later as a result of massive head injuries.
The room itself was in total disarray: dresser drawers had been pulled out, things were "strewn around" and a suitcase containing  inter alia  assorted English coins had been pulled out from under the victim's bed. The only window leading to the fire escape was wide open. Later investigation disclosed that a window adjacent to the fire escape on the floor below had been broken from the outside.
Details of relevant events immediately before and after the vicious attack were supplied through the testimony of several witnesses. About 6 *567 p.m. that evening, Yvonne Garcia, who resided down the hall from the victim's room, heard Mrs. Thomas' distinctive voice exclaim: "What are you doing in my room?" A few minutes later the desk clerk received a call from Mrs. Thomas  screaming for help. Mrs. Bishop, the house-keeper, rushed to the victim's room. Receiving no answer to her knock, she returned to the elevator to obtain a pass key when she heard the sound of breaking glass. Four other tenants called the switchboard to report the sound of breaking glass. Defendant, who had resided at the hotel for about two weeks, occupied room 626, immediately across the hall from room 612, the victim's room. Mrs. Bishop testified that when she first responded to the victim's call, the door to room 626 was open, that when she returned with the pass key, the door was closed. Upon receipt of this information, one of the police officers (who had responded within minutes of the discovery) knocked on defendant's door; defendant answered dressed only in undershorts. The investigating officers observed that defendant had a black eye and fresh cuts on his back, hands and thigh. The officers also observed glass particles on a pair of shoes found in defendant's room. Defendant informed the officers that the wounds resulted from a fight he had earlier that day with an unknown male.[2] While admitting the shoes belonged to him, he declared he had not worn them that day. A subsequent laboratory analysis of the glass particles embedded in the soles of the shoes matched the glass from the broken fifth floor window.[3] Examination of defendant's trousers revealed additional glass fragments and a white powdery substance similar to the oxidized white paint on the fire escape.
On April 23 a search of defendant's room was conducted, pursuant to a warrant, revealing a cardboard box containing dirty clothes and a two-shilling English coin. Several days later, an employee of a neighboring business establishment discovered the victim's room keys on the roof of the adjoining building, within throwing distance of room 612.
Defendant testified in his own defense denying any complicity in the crime. Defendant repeated his exculpatory account of how he received his minor injuries and explained that the English coin was owned by him and retained as a good-luck piece.

*568 I
(1) The jury was instructed and the prosecution argued alternative theories of felony murder and premeditated murder. Defendant contends that since the evidence was insufficient to support a finding of first degree murder based upon premeditation and deliberation, instructions on that theory constituted reversible error. (Cf. People v. Green (1980) 27 Cal.3d 1, 70-71 [164 Cal. Rptr. 1, 609 P.2d 468]; People v. Anderson (1965) 63 Cal.2d 351 [46 Cal. Rptr. 763, 406 P.2d 43]; People v. Houts (1978) 86 Cal. App.3d 1012, 1019-1021 [150 Cal. Rptr. 589].)
We need not engage in extended discussion whether the evidentiary record is sufficient to sustain a finding of premeditation and deliberation under the analysis developed in People v. Anderson (1968) 70 Cal.2d 15, 26-27 [73 Cal. Rptr. 550, 447 P.2d 942], where, as here, it appears beyond a reasonable doubt that the jury based its verdict on a theory of felony murder supported by competent evidence. (See People v. Cantrell (1973) 8 Cal.3d 672, 686 [105 Cal. Rptr. 792, 504 P.2d 1256].) Unlike People v. Green, supra, 27 Cal.3d 1, upon which defendant also relies, no special circumstance question is presented herein so as to require a separate finding that the murder was committed during the commission of the underlying felony. (Id., at pp. 59, 61; cf. People v. Thompson (1980) 27 Cal.3d 303 [165 Cal. Rptr. 289, 611 P.2d 883].) On the contrary, for purposes of the felony-murder rule, there is no requirement that death be caused as a consequence of the felony. "[T]he homicide is committed in the perpetration of the felony if the killing and the felony are parts of one continuous transaction." (People v. Whitehorn (1963) 60 Cal.2d 256, 264 [32 Cal. Rptr. 199, 383 P.2d 783].) Such a killing is murder of the first degree by force of section 189 of the Penal Code, whether the killing was intentional or accidental. (See People v. Cantrell, supra, 8 Cal.3d at p. 688.)
The circumstantial evidence that the killing resulted during the commission of the crime of burglary is strong and compelling. Moments before discovery of the unconscious victim, a witness heard her verbal protestations to an intruder, followed by her frantic telephone call for help. Shortly thereafter, witnesses observed the battered victim  her arm entangled in the telephone cord  lying in her room with her personal belongings strewn about, the fire escape window open. Such evidence clearly supported an inference of a burglary involving a confrontation between the victim and the burglar who inflicted the mortal *569 wounds. The uncontroverted prosecution evidence clearly established that the killing and burglary were part of one continuous transaction. The jury having found the defendant guilty of burglary based upon substantial admissible evidence, there is no reasonable likelihood that it would have based its verdict on a theory other than felony murder. Since the jury was correctly instructed under the felony-murder doctrine, the error  if any  in submitting additional instructions concerning premeditated and deliberated murder could not possibly have affected the jury's verdict so as to result in a miscarriage of justice. (People v. Cantrell, supra, 8 Cal.3d at pp. 686, 688.)
Although defendant presents a forceful argument in his supplemental brief challenging the validity of the felony-murder rule on constitutional grounds, the rule is firmly established in a long line of decisions (see, e.g., People v. Burton (1971) 6 Cal.3d 375, 388 [99 Cal. Rptr. 1, 491 P.2d 793]; People v. Salas (1972) 7 Cal.3d 812, 820-824 [103 Cal. Rptr. 431, 500 P.2d 7, 58 A.L.R.3d 832], cert. den. 410 U.S. 939 [35 L.Ed.2d 605, 93 S.Ct. 1401]; People v. Washington (1965) 62 Cal.2d 777, 780-783 [44 Cal. Rptr. 442, 402 P.2d 130]) which we are bound to follow. (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450 [20 Cal. Rptr. 321, 369 P.2d 937].)

II
Relying on a series of decisions proscribing overbroad, exploratory searches (see, e.g., Burrows v. Superior Court (1974) 13 Cal.3d 238 [118 Cal. Rptr. 166, 529 P.2d 590]; People v. Murray (1978) 77 Cal. App.3d 305 [143 Cal. Rptr. 502]; Thompson v. Superior Court (1977) 70 Cal. App.3d 101 [138 Cal. Rptr. 603]), defendant next contends that the English coin seized during the search of defendant's room pursuant to a warrant should have been suppressed. We disagree.
The search warrant issued by the magistrate authorized a search for five specific items: (1) rug fibers, (2) hair of the victim, (3) stolen property, (4) clothing of the suspect, and (5) pieces of glass. The incriminating English two-shilling coin was apparently seized as "stolen property." Defendant challenges the admissibility of such evidence on the ground that the general description of "stolen property" violated the constitutional requirement that property descriptions in search warrants be set forth with particularity. However, defendant raises no objection to the validity of the warrant insofar as it authorized the search and seizure of the four other listed items.
*570 (2) Even were we to assume that the single category of "stolen property" is overbroad and lacking in the requisite particularity, "any thing properly seized as a result of an authorized search for articles properly described may be used in evidence." (People v. Superior Court (Marcil) (1972) 27 Cal. App.3d 404, 415 [103 Cal. Rptr. 874]; see Aday v. Superior Court (1961) 55 Cal.2d 789, 797 [13 Cal. Rptr. 415, 362 P.2d 47].) Here, the officers necessarily engaged in an intensive inspection of defendant's room in conducting the authorized search for certain of the minute items. Where during the course of such an authorized search the coin was routinely discovered, as here, they were entitled to seize it as an item in plain view. (See Skelton v. Superior Court (1969) 1 Cal.3d 144, 157 [81 Cal. Rptr. 613, 460 P.2d 485]; see also People v. Superior Court (Meyers) (1979) 25 Cal.3d 67, 72-75 [157 Cal. Rptr. 716, 598 P.2d 877].) The requisite nexus  facts from which a rational link between the item seized and criminal behavior can be inferred (People v. Hill (1974) 12 Cal.3d 731, 763 [117 Cal. Rptr. 393, 528 P.2d 1])  was established from the English coin itself and the English heritage of the victim. In light of the totality of such circumstances, the coin, discovered in plain view during the course of the otherwise valid search, was properly subject to seizure and admissible in evidence.[4]
Judgment affirmed.
Newsom, J., and Martin, J.,[*] concurred.
A petition for a rehearing was denied March 9, 1982, and appellant's petition for a hearing by the Supreme Court was denied April 7, 1982.
NOTES
[1] An earlier proceeding resulted in a mistrial due to the jurors' inability to reach a verdict.
[2] Later that evening, after advice and waiver of rights, defendant stated he received the injuries in two fights.
[3] Comparative tests of orange-colored rug fibers adhering to the soles of defendant's shoes with the rug in the victim's room proved inconclusive.
[4] We have considered three additional evidentiary objections raised by defendant in an in pro. per. letter brief. We conclude none of the arguments has any presumptive merit and need not be discussed; in any event, those objections were not raised below and thus may not be raised on appeal. (Evid. Code, § 353.)
[*] Assigned by the Chairperson of the Judicial Council.