[Crim. No. 4458. In Bank. July 14, 1943.]

THE PEOPLE, Respondent, v. LYLE CECIL GILBERT et al., Appellants.

Rosalind Goodrich Bates, Nathan O. Freedman and A. Wm. Christlieb for Appellants.

Robert W. Kenny, Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Respondent.

THE COURT.—The appealing defendants pleaded guilty to the crime of murder, committed during the commission of the crime of robbery. They do not dispute the facts which legally and admittedly constitute their crime murder in the first degree, but they appeal from judgments of death imposed by the trial court and contend that such court abused its discretion in several particulars hereinafter severally discussed. They seek to have the sentences modified to life imprisonment. The State challenges the power of this court, in view of its prior decisions, to consistently make such modifications. As we have concluded that the record discloses no abuse of discretion by the trial court, it is unnecessary to pass upon such last-mentioned law point.

An information (amended) containing four counts was filed by the District Attorney of Los Angeles County against the appellants and a codefendant, Max Gilbert. Count one charged all of the defendants jointly with the murder of Lee N. Bunch, a police officer. Count two charged them with robbery of H. N. Griffin, and counts three and four charged them with the attempted murder of Benjamin Bailuis and Charles Piercey, respectively. Prior convictions were also alleged against appellants. The codefendant, Max Gilbert, entered a plea of not guilty to all the charges. Each appellant entered a plea of guilty to the charge of murder in count one, and denied the prior convictions. It was thereupon stipulated that the evidence adduced at the preliminary hearing and at

the trial of Max Gilbert could be considered by the court for the purpose of fixing the degree of the crime and the sentences to be imposed against appellants on the murder charge. It was further agreed that the prosecution and the defendants "may introduce additional evidence if they so desire." The pronouncing of judgment and sentence on appellants as to the murder charge was set for a future date, and the trial of Max Gilbert on his plea of not guilty proceeded. Ultimately he was adjudged to be guilty of murder of the first degree and was sentenced to life imprisonment. Upon the conclusion of the Max Gilbert trial, the trial court heard additional evidence addressed to the prior convictions charged against appellants and also as to the degree of the murder to which they had entered pleas of guilty. The court ruled that the murder was of the first degree and imposed the death penalty as against both appellants. It thereupon dismissed counts two, three, and four of the information. Appellants gave oral notice of appeal from the judgments imposing the death penalty.

Appellants, at the proceedings in the superior court up to and including the pronouncement of judgment, were both represented by the same counsel. In view of certain criticism by one of the appellants of the conduct of his case it is appropriate to observe that the conduct of the appellants' cases by their counsel, on the face of the record, appears to have been characterized by frank admissions of guilt, by the making of timesaving stipulations, and, withal, by determined (though unavailing) efforts to serve the appellants to the full extent on which the facts seem to admit of debatable conclusions. In such conduct, counsel appears to have displayed a commendable combination of zeal for the cause of appellants and appreciation of duty as an officer of the court. The debated conclusion in the superior court in each case was, shall the penalty be death or life imprisonment? As previously noted, the trial court sentenced each appellant to death and we are asked to modify the sentences to life imprisonment. We have concluded that the judgments must be sustained and that upon the showing made the sentences cannot be modified by us.

The record discloses that early in the morning of March 8, 1942, the codefendant Max Gilbert, who is a younger brother of appellant Lyle Gilbert, transported Orville Horgan (now deceased) and appellants Lyle Gilbert and John Lovelace,

in an automobile belonging to Max Gilbert, to the Twin Palms Cafe in the city of Gardena, California. Max Gilbert remained in his automobile. The other three men, each of whom was armed with a deadly weapon, entered the building, in which a card room and restaurant were maintained. Lovelace went into the dining room where customers were seated at the lunch counter, and kept them ''covered'' while Horgan, who was armed with a sawed-off shotgun, entered the card room where several persons were seated playing cards. He ordered the occupants to put up their hands and line up with their faces to the wall. Lyle Gilbert proceeded to the rear of the building to search for the proprietor. A scuffle there ensued in which appellant Gilbert struck the proprietor on the head three or four times with his gun. With a gun at his back, the proprietor was forced to enter the card room where appellant Gilbert then took $317 from his person. While Horgan held the shotgun pointed at the men lined up, appellant Gilbert, at Horgan's direction, began to search them. The deceased, Lee N. Bunch, a policeman in plain clothes, was among those lined up. While facing the wall Bunch, living up to the highest traditions of the police force, reached for his gun, turned around and fired several times, succeeding, despite the disadvantage of his position, in wounding both Horgan and Lyle Gilbert. Horgan returned the fire and Bunch died almost immediately from shotgun wounds. Two of the other men who were lined up (Bailuis and Piercey, referred to in counts three and four of the information) also received shotgun wounds. Shortly after the gunfire between Horgan and Bunch (neither appellant fired any shot) appellants and Horgan ran from the building and were driven away by Max Gilbert, who had waited outside in his automobile. Horgan died from his wounds prior to the trial.

When apprehended, appellant Lovelace and Max Gilbert made statements to the police officers admitting the charges. Both accompanied the officers to the scene of the robbery and there related further details of what had taken place on the night Bunch was shot. Upon the trial of Max Gilbert he and the appellants took the witness stand and gave testimony which established the commission of the crime substantially as related above.

Appellants contend that the trial court was guilty of an abuse of discretion in that: (1) it refused to permit any evidence affecting appellants alone to be introduced at the

trial of Max Gilbert; (2) it made remarks from the bench and asked questions pertaining to the crime of kidnaping, with which offense appellants were not formally charged; (3) at the time of judgment it read a prepared statement which appellants assert indicated a conclusion previously reached "without taking into any account the evidence offered in behalf of the defendants"; and (4) assertedly it allowed public clamor in connection with another pending criminal case to influence its judgment in this case.

As to the first contention, that during the trial of Max Gilbert the trial court improperly refused to admit certain evidence not affecting Max Gilbert and relating only to the appellants, the record shows that during that trial counsel for appellants stated there were one or two things which did not concern Max Gilbert and about which she desired to question appellant Lovelace at that point, for the consideration of the court in determining the degree of the crime as to the appellants. The trial judge then stated, "Well, I think we will take that up in subsequent proceedings." This ruling of the trial court was in accordance with the prior stipulation and, moreover, the order of the proof rests in the discretion of the trial court. Although assigning as an abuse of discretion the refusal to receive the evidence at that time, appellants do not contend that the court refused to accord them a full opportunity to produce all the evidence they desired prior to fixing the degree of the crime. The record affirmatively shows that following the Max Gilbert trial the court addressed itself to the hearing of additional evidence on the question of the degree of the homicide to which appellants had pleaded guilty. Several witnesses were called by the defense, after which the court inquired of appellants' counsel whether "That is all the evidence you have to offer?" Counsel replied, "Yes." In view of the stipulation above referred to and the fact that appellants were accorded opportunity to adduce such additional evidence as they desired, it does not appear that any prejudice resulted from the order in which the proof was admitted.

Appellants next contend that the court abused its discretion in making the assertion, during the course of remarks made by it in connection with its ruling as to the degree of the crime and the punishment to be exacted, that the evidence showed the commission of an offense (kidnaping) not charged in the information. They further complain that during the

hearing to determine the degree of the crime the trial judge propounded questions to the proprietor of the cafe and his wife which were aimed at the determination of the question whether the crime of kidnaping had been committed. Both witnesses previously had given testimony of like purport in response to questions propounded by counsel during the trial of Max Gilbert. As to the court's reference in its remarks to the possible guilt of appellants of the crime of kidnaping, we are of the opinion that appellants were not prejudiced thereby. ██ In determining the degree of an offense and the punishment to be imposed, after a plea of guilty, it is the duty of the trial court to consider matters in aggravation as well as in mitigation of the offense. The legal significance of established facts may well constitute an element of which cognizance is taken in the exercise of judicial discretion. A hearing for the determination of the degree of an offense and the punishment therefor is not a trial in the full technical sense, and is not governed by the same strict rules of procedure as a trial. As stated in *People* v. *Williams,* 14 Cal.2d 532, 536 [95 P.2d 456] (quoting from *People* v. *Popescue,* 345 Ill. 142, 153, 158 [177 N.E. 739, 77 A.L.R. 1199]) it is "simply a statutory hearing, by which the court examined witnesses to determine whether any facts existed to aggravate or mitigate the punishment," and "in considering evidence in aggravation or mitigation of the offense the court may consider many matters 'not admissible on the issue of guilt or innocence'. . . ."

██ It is next urged that immediately after the witnesses had testified at the hearing on the degree of the crime, and after argument had been made thereon, the trial judge read a written document in which he had set forth his views as to the guilt of appellants. Among other things contained therein was the statement that the evidence indicated that at the time of the commission of the robbery appellants had also committed the crime of kidnaping, as denounced by section 209 of the Penal Code (an offense with which defendants were not charged) ; that the evidence showed that they had committed murder in the first degree and, in the absence of a showing of extenuating circumstances, it was the view of the court that the death penalty should be imposed. Appellants urge that the very existence of such document indicated that the trial court had prejudged the issue in that the written document apparently had been prepared prior to the opening of the hearing on that morning and before appellants'

witnesses had been heard, their testimony having been given during that morning preceding the reading of the document. Upon prompt accusation by counsel the trial judge denied that he had made up his mind what his decision would be before hearing the defense witnesses, stating, ''I made up my mind as to what this sentence was to be when you [counsel] sat down [after final argument to the court] and I received the last bit of information upon which this judgment is predicated.''

The record shows that prior to the day on which the document was read, the court had heard testimony (comprising some 2,000 pages of the 2,098-page transcript) which included all the testimony given at the Max Gilbert trial, in which the circumstances surrounding the commission of the robbery and the shooting of Bunch had been related in detail. Before reading the document the court also had heard all of the testimony adduced by appellants as to the degree of the crime. The fact that the trial judge had made advance preparation for his decision, as disclosed by the production and reading of the written statement, does not establish that he rendered his decision in disregard of the defense evidence. It is reasonable to infer that after hearing the defense evidence the trial court concluded that it in no way destroyed the effect of the testimony already heard by him, and indicating the murder to be of the first degree. It is not contended by appellants that the evidence as a whole points to the homicide as other than that of the first degree. It cannot be questioned that murder perpetrated in the commission of a robbery, or of an attempt to commit robbery, is murder of the first degree (Penal Code, sec. 189; see *People* v. *Vaiz,* 55 Cal. App.2d 714, 715 [131 P.2d 407]) and that all persons engaged therein, whether or not they actually fired the fatal shot or delivered the lethal blow, are equally answerable for all the natural consequences thereof. (*People* v. *Martin,* 12 Cal.2d 466, 472 [85 P.2d 880]; *People* v. *Perry,* 195 Cal. 623, 638 [234 P. 890].) It was the trial court's duty to determine which of the penalties provided by law should be imposed. (Penal Code, sec. 190; *People* v. *Paraskevopolis,* 42 Cal.App. 325, 331 [183 P. 585].) It does not appear, from a consideration of the evidence, that the trial court abused its discretion.

The contention that the trial judge allowed himself to be influenced by asserted newspaper publicity and public interest in another criminal trial which was proceeding simul-

taneously with the instant case, is not supported by any reference to the record indicating that he was so influenced. The statement in the written document, before referred to, that many recent crimes had been committed by gangsters in the immediate community, establishes nothing on which appellants can predicate a claim of error or abuse of discretion. It certainly does not require the conclusion that the trial court erred in determining that the admitted homicide was murder of the first degree, or that it abused its discretion in refusing to mitigate to life imprisonment the punishment fixed by law for that crime. Under the admitted facts the selection of either of the alternative penalties (Penal Code, sec. 190) was within the bounds of judicial discretion.

■ As to the asserted mitigating circumstances attending the offenses of appellants, including the facts that appellant Gilbert, although armed at the time he was wounded by officer Bunch, did not return the fire, and that Lovelace was physically handicapped, youthful, and acting under the direction of the apparently more hardened and forceful Horgan, it is not under any advocated theory within our province to exercise original discretion in the premises. If we were to assume all that is urged by appellants with respect to our power of review, we could modify the judgments only if it appeared that the discretion of the trial court had been abused *as a matter of law* (see Cal. Const., art. VI, sec. 4). Whether we might on original consideration of the facts differ from the trial judge is therefore immaterial. The controlling point is that the evidence is not insufficient as a matter of law to support the conclusions reached by the trial court.

Examination of the record discloses that no substantial right of either appellant was prejudiced by any of the above-mentioned matters. Appellants admitted that Bunch was shot and killed by their confederate while they were perpetrating a robbery. We find nothing in the proceedings leading up to the imposition of the judgments and sentences that appears to require a reversal of such judgments or a modification of the sentences. It is therefore unnecessary in this case to consider the question as to whether the bounds of jurisdiction, and of discretion, in the imposition of sentence in such cases are identical, or as to whether this court may properly review the exercise of judicial discretion by the trial court in the premises.

The judgments are and each is affirmed.