**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JAMES FREDDIE CAVITT,
        *Petitioner-Appellant*,

v.

VINCE CULLEN, Warden,
        *Respondent-Appellee.*

No. 10-16988

D.C. No.
5:05-cv-03064-
JF

OPINION

Appeal from the United States District Court
for the Northern District of California
Jeremy D. Fogel, District Judge, Presiding

Argued and Submitted
March 13, 2013—San Francisco, California

Filed August 29, 2013

Before: John T. Noonan, Raymond C. Fisher, and
Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Fisher

# SUMMARY[*]

## Habeas Corpus

The panel affirmed the district court's denial of a 28 U.S.C. § 2254 habeas corpus petition challenging the California Supreme Court's construction and application of the felony murder rule.

Petitioner and a friend robbed the stepmother of petitioner's girlfriend, then left the stepmother hogtied on the bed but alive. They pretended to bind the girlfriend and placed her on the bed next to her stepmother. Petitioner claimed that the girlfriend killed her stepmother after he left.

The panel first rejected petitioner's contention that the requirement of a "logical nexus" between the felony and the victim's death under California law is unconstitutionally vague, because the California Supreme Court provided guidance as to what a logical nexus means, and because there were objective facts in this case that connected the victim's death to the felony, even if someone else killed her after petitioner left the scene.

The panel next held that the California Supreme Court's adoption of the logical nexus rule in petitioner's case was not an unforeseeable and retroactive judicial expansion of liability that violated clearly established federal law, when California case law suggested but no court had held that a

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

robber was not liable for a killing that his co-felon committed during the robbery for reasons independent of the robbery.

The panel rejected petitioner's challenge to the trial court's instructions relating to felony murder, because there was no harm in limiting the jury's consideration of evidence that the girlfriend hated her stepmother, and the failure to instruct explicitly in terms of "nexus" was, at most, harmless error.

---

**COUNSEL**

Neil Jacob Rosenbaum, Rosenbaum & Associates, San Francisco, California, for Petitioner-Appellant.

Juliet B. Haley (argued), Deputy Attorney General, Kamala D. Harris, Attorney General of California, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Senior Assistant Attorney General, Peggy S. Ruffra, Supervising Deputy Attorney General, San Francisco, California, for Respondent-Appellee.

---

**OPINION**

FISHER, Circuit Judge:

James Freddie Cavitt and his girlfriend Mianta McKnight robbed the house of Betty McKnight, Mianta's stepmother. Cavitt admits that he and Mianta robbed the victim's home and left her hogtied and face-down with a sheet taped around her head. He contends, however, that Betty was alive, albeit

breathing laboriously, when he left. Betty McKnight was not breathing and had no pulse by the time police arrived 22 minutes later. Cavitt speculates that, after he left, Mianta killed Betty because of personal hatred, a motive he says was unrelated to the robbery. The state trial court, reasoning that Cavitt's theory, even if true, would not absolve him of felony murder, did not let him present his theory to the jury. He was convicted of felony murder.

The California Supreme Court held that, regardless of who killed Betty, Cavitt could be liable for felony murder because there was a "logical nexus" between the robbery and Betty's death. Seeking a federal writ of habeas corpus, Cavitt argues that the California Supreme Court's decision violated his constitutional rights. Specifically, he argues that the "logical nexus" requirement is unconstitutionally vague, that its application in his case was unconstitutionally retroactive and that the trial court's evidentiary rulings and jury instructions violated his constitutional rights. Reviewing with the deference AEDPA requires of us, we cannot agree. The California Supreme Court gave adequate guidance for how the logical nexus test should be applied, such that it did not clearly violate the Constitution's prohibition on vague and standardless statutory constructions. Although the court articulated the logical nexus formulation for the first time in Cavitt's appeal, its previous articulations of the felony murder rule at the time of Cavitt's crime were such that the logical nexus test was not unexpected and indefensible by reference to existing law. Accordingly we cannot say that adoption of the logical nexus rule was impermissibly retroactive. As for Cavitt's evidentiary objections, they stem from his objection to the logical nexus test, so we also see no error in the trial court's evidentiary rulings. Finally, because there is an obvious logical nexus between Cavitt's actions and Betty's

death, any error resulting from the omission of the "logical nexus" phrasing from the jury instructions was harmless. Accordingly, we affirm the district court's denial of Cavitt's habeas petition.

## BACKGROUND

Cavitt, along with his girlfriend Mianta McKnight and a friend named Robert Williams, set out to rob Mianta's stepmother Betty McKnight. In December 1995 the three met at the McKnight house. Mianta let in Cavitt and Williams and told them that Betty was upstairs in bed. Cavitt and Williams went upstairs, threw a sheet over Betty's head and fastened it with duct tape. They fastened her wrists together with plastic flex cuffs and used a rope to bind her ankles. They then used the rope to tie together Betty's legs, her arms and the sheet they had already taped around her head. During the process, Cavitt and Williams punched Betty repeatedly to subdue her, causing extensive bruising to her face, shoulders, arms, legs, ankles and wrists.

With Betty subdued, the trio searched the bedroom and removed cash, cameras, Rolex watches, jewelry and two handguns. Before leaving, Cavitt and Williams pretended to bind Mianta and placed her on the bed next to her stepmother. Cavitt and Williams claim they left Betty face down on the bed, albeit breathing laboriously.

Cavitt and Williams left the McKnight home at 7:30 p.m. Mianta freed herself and, at 7:44 p.m., called her father and told him they had been robbed. Police arrived at the house at 7:52 p.m. and, finding Betty without a pulse, began administering CPR at 7:53 p.m. Paramedics restored Betty's pulse at 8:25 p.m., but she had suffered irreparable oxygen

deprivation and was declared dead the following morning. The cause of death was asphyxiation.

A jury convicted Cavitt of, among other things, first degree murder with the special circumstances of robbery and burglary. The state's theory was felony murder. Cavitt sought to rebut the felony murder theory by arguing that Mianta must have killed Betty after they had left, for reasons unrelated to the burglary. To that end he tried to introduce evidence that Mianta hated her stepmother. The trial court held that Cavitt's defense was untenable. Accordingly, it issued a limiting instruction that evidence of Mianta's hatred of her stepmother should not be considered for purposes of the felony murder charge, and did not instruct the jury on this theory.[1] Instead, the trial court gave the following instructions:

> In order to prove this crime, each of the following elements must be proved: one, a human being was killed; two, the killing was unlawful; and three, the killing occurred during the commission or attempted commission of robbery or burglary.
>
> The unlawful killing of a human being, whether intentional, unintentionally or accidental, which occurs during the commission or as a direct causal result of robbery or burglary, is murder of the first degree when the perpetrator had the specific intent to commit that crime. The specific

---

[1] The trial court did admit the testimony for the limited purpose of proving the burglary and robbery special circumstances.

intent to commit robbery or burglary and the commission of such crime must be proved beyond a reasonable doubt.

A killing is committed in the commission of a felony if the killing and the felony are part of one continuous transaction. There is no requirement that the homicide occur while committing or while engaged in the felony or that the killing be part of a felony other than that the two acts be part of one continuous transaction.

The jury convicted, and the judgment was affirmed by the California Court of Appeal in an unpublished opinion. Cavitt then sought review by the California Supreme Court, which granted review and affirmed the convictions in a published opinion. *See People v. Cavitt*, 91 P.3d 222 (Cal. 2004). The district court denied Cavitt's habeas petition, and we granted a certificate of appealability.

## STANDARD OF REVIEW

We review the decision to deny relief under 28 U.S.C. § 2254 de novo. *See Bribiesca v. Galaza*, 215 F.3d 1015, 1018 (9th Cir. 2000). "Under the Anti-Terrorism and Effective Death Penalty Act of 1996 [AEDPA], a habeas petition will not be granted with respect to any claim adjudicated on the merits in a state court unless the adjudication '(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light

of the evidence presented in the State court proceeding.'" *Id.* (quoting 28 U.S.C. § 2254(d)). A decision that is contrary to or an unreasonable application of clearly established federal law does not warrant habeas relief unless the error was prejudicial. *See Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993).

## DISCUSSION

Cavitt contends that, after he left, Mianta must have asphyxiated Betty for reasons unrelated to the robbery. There is at least some evidence in favor of this theory, so – as did the California Supreme Court – we accept it as our point of departure. We assume throughout that Cavitt is correct and that Mianta killed Betty after he left and out of malice.

We granted a certificate of appealability on three issues: (1) whether the California Supreme Court's construction of the felony murder rule rendered the rule unconstitutionally vague; (2) whether the rule's application to Cavitt was unconstitutionally retroactive in violation of *Bouie v. City of Columbia*, 378 U.S. 347 (1964); and (3) whether the trial court's jury instructions on felony murder, together with its evidentiary rulings, violated Cavitt's constitutional rights. We discuss each in turn.

## I.

The California Supreme Court held that, under California law, "there must be a logical nexus – i.e., more than mere coincidence of time and place – between the felony and the act resulting in death before the felony-murder rule may be applied to a nonkiller." *Cavitt*, 91 P.3d at 227. Cavitt argues that this test is unconstitutionally vague.

To satisfy due process, "a penal statute [must] define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Outside the First Amendment context, we do not consider "whether the statute is unconstitutional on its face," but rather "whether the statute is impermissibly vague *in the circumstances of [the] case*." *United States v. Rodriguez*, 360 F.3d 949, 953 (9th Cir. 2004) (quoting *United States v. Purdy*, 264 F.3d 809, 811 (9th Cir. 2001)). The void-for-vagueness doctrine can apply to statutory constructions as well as statutory language. *Cf. United States v. Shetler*, 665 F.3d 1150, 1164–65 (9th Cir. 2011) (holding that a statute was not unconstitutionally vague when viewed through the prism of this court's narrowing construction).

Cavitt argues that the "logical nexus" terminology fails this test, but he rests on general principles and cites no authority aside from cases defining the void-for-vagueness doctrine. As the district court noted, the California Supreme Court provided guidance as to what a logical nexus means. It requires "more than mere coincidence of time and place," and instead turns on "the existence of objective facts that connect the act resulting in death to the felony the nonkiller committed or attempted to commit." *Cavitt*, 91 P.3d at 227, 233. Such objective facts were plentiful here. Even under Cavitt's theory of the case – that Mianta killed her stepmother for reasons unrelated to the robbery and after Cavitt left – Mianta was in a position to do so because Cavitt and Williams had already beaten Betty, bound her, covered her face with a sheet, fastened the sheet with duct tape and given Mianta cover by allowing her to blame the killing on the "robbers." There is a clear connection between the felony

Cavitt set out to commit and Betty McKnight's subsequent death. Therefore, we reject Cavitt's void-for-vagueness argument.

## II.

An "unforeseeable and retroactive judicial expansion of narrow and precise statutory language" violates due process. *Bouie v. City of Columbia*, 378 U.S. 347, 352 (1964). This rule applies not just to judicial expansions of statutory language, but also where a court switches from a narrow judicial construction of a statute to a broader construction. *See Marks v. United States*, 430 U.S. 188, 195–96 (1977) (holding that *Bouie*'s retroactivity rule was implicated when the Supreme Court shifted from a narrow interpretation of obscenity laws to a broader one). Cavitt argues that, in 1995, California's felony murder rule would not have encompassed a killing committed by an accomplice during the commission of a felony but not in furtherance of the crime.[2] Only in its 2004 opinion in Cavitt's case did the California Supreme Court expressly say that the rule covered such a killing so long as a "logical nexus" between the felony and killing was present. Cavitt contends that this was an "unforeseeable and retroactive judicial expansion" of liability in violation of *Bouie*. Although Cavitt's argument has some force, we cannot agree in light of the substantial deference AEDPA requires us to give to state courts. Cavitt has identified no case where the California Supreme Court held that a criminal defendant is not liable for felony murder in circumstances like his. On the contrary, some authority demonstrates that

---

[2] "Because the *Bouie* analysis focuses on notice to the defendant, we look only to cases decided before the crime was committed." *Clark v. Brown*, 450 F.3d 898, 912 (9th Cir. 2006).

the application of the felony-murder rule to a defendant like Cavitt was either unsettled or appropriate. Thus, we must defer to California's interpretation of its own rule.

After oral argument, we ordered supplemental briefing to address the United States Supreme Court's recent decision in *Metrish v. Lancaster*, 133 S. Ct. 1781 (2013), which considered a *Bouie* claim similar to Cavitt's and therefore informs our decision. The issue there was the diminished-capacity defense to murder. At the time of the crime, the Michigan Court of Appeals had consistently recognized a diminished-capacity defense, the Michigan Supreme Court had repeatedly referred to the defense "without casting a shadow of a doubt on it" and the defense was included in the Michigan State Bar's pattern jury instructions. *Id.* at 1786. The defense was also featured in the Model Penal Code, favored by the American Bar Association's criminal-justice guidelines and accepted in a majority of states. *See id.* at 1791–92. After the crime but before Lancaster's trial, the Michigan Supreme Court abolished the defense. *See id.* at 1790–91. "Noting that previously it had 'acknowledged in passing the concept of the diminished capacity defense,' Michigan's high court emphasized that it had 'never specifically authorized use of the defense in Michigan courts.'" *Id.* at 1790 (footnote and alterations omitted) (quoting *People v. Carpenter*, 627 N.W.2d 276, 281 (Mich. 2001)). The Michigan courts held that Lancaster was not entitled to a diminished capacity instruction, and the United States Supreme Court held that "the Michigan Court of Appeals' decision applying [the new rule] retroactively does not warrant disapprobation as an unreasonable application of clearly established federal law," as would be required to grant habeas relief. *Id.* at 1791 (quoting 28 U.S.C. § 2254(d)(1)) (internal quotation marks and alterations omitted). The Court

reasoned that *Bouie* is not violated "where a state supreme court, squarely addressing a particular issue for the first time, reject[s] a consistent line of lower court decisions based on the supreme court's reasonable interpretation of the language of a controlling statute." *Id.* at 1792. This is because "[f]airminded jurists could conclude that a state supreme court decision of that order is not 'unexpected and indefensible by reference to existing law.'" *Id.* (quoting *Rogers v. Tennessee*, 532 U.S. 451, 462 (2001)) (alteration omitted).

Before *Cavitt*, most California felony-murder cases defined felony murder as a killing done "in furtherance" of the felony. Taken literally and pushed to its limit, this formulation supports Cavitt's argument. Under his theory, Mianta killed Betty out of animus, not to further the robbery. A careful reading of the cases, however, reveals them to be like the "diminished capacity" references that the Michigan Supreme Court cast aside when it abolished the diminished capacity defense in Michigan. Although the California courts had used the words "in furtherance" quite frequently, they had never squarely considered the issue here: whether a robber is liable for felony murder when his co-robber kills the target of the robbery out of malice rather than a desire to further the robbery.

The "in furtherance" line of cases apparently began with *People v. Vasquez*, 49 Cal. 560, 563 (1875), which held that it was a correct statement of the law to instruct the jury that a co-felon is guilty of murder if the murder was committed in

furtherance of the common purpose to rob.[3] The "in furtherance" phrase in the modern era can be traced to *People v. Schader*, 401 P.2d 665, 674 (Cal. 1965), *overruled on other grounds by People v. Cahill*, 853 P.2d 1037 (Cal. 1993), which used the phrase but did not rely on it. *Schader* was immediately followed by *People v. Washington*, 402 P.2d 130, 133–34 (Cal. 1965), which held that a robber was not guilty of felony murder when the victim shot an accomplice while resisting the robbery. Since then, the "in furtherance" requirement has been frequently repeated, but infrequently

---

[3] For other cases in the *Vasquez* line, see *Pizano v. Superior Court*, 577 P.2d 659, 665 (Cal. 1978) ("[P]etitioner may be found guilty of murder for a killing attributable to the act of his accomplice if the act was committed in furtherance of the common design."); *People v. Satchell*, 489 P.2d 1361, 1365 (Cal. 1971), *overruled on other grounds by People v. Flood*, 957 P.2d 869 (Cal. 1998) ("[F]or example, we have refused to apply the doctrine in cases wherein the killing is committed by persons other than the defendant or an accomplice acting in furtherance of a common felonious design . . . ."); *People v. Terry*, 466 P.2d 961, 987 (Cal. 1970) (noting that a proposed instruction requiring furtherance "correctly stat[ed] the law"); *People v. Gilbert*, 408 P.2d 365, 374 (Cal. 1965), *vacated on other grounds*, 388 U.S. 263 (Cal. 1967) ("Under the rules defining principals and criminal conspiracies, the defendant may be guilty of murder for a killing attributable to the act of his accomplice. To be so guilty, however, the accomplice must cause the death of another human being by an act committed in furtherance of the common design."); *People v. Lawrence*, 76 P. 893, 897 (Cal. 1904) (stating the "rule of absolute responsibility of a party for a homicide committed by his associates in furtherance of their common purpose to rob"); *People v. Olsen*, 22 P. 125, 126 (Cal. 1889) (hypothesizing that the felony murder doctrine would not be applicable if the murder were "a fresh and independent product of the mind of one of the conspirators outside of and foreign to the common design").

applied or subjected to meaningful examination.[4]  Of those cases that have analyzed or relied on it, many did not involve killings committed by co-felons.[5]  Of the very few that did consider killings done by a co-felon, in each case the "in furtherance" recitation was dictum and the court ultimately upheld the defendant's conviction.  *Terry* stated that it was a correct statement of the law that "where . . . one who is acting jointly in the commission of a crime with another . . . commits an act which is neither in furtherance of the object of the . . . intended crime nor the natural and probable consequence of an attempt to attain that object . . . no responsibility therefor attaches to any of his confederates," but noted that the statement "had no application to the facts of the case."  466 P.2d at 987 & n.18.  And *Olsen* held that, because an instruction excluded murders that were "a fresh and independent product of the mind of one of the conspirators outside of and foreign to the common design," it did not need to consider counsel's argument that the murder had been outside the common felonious purpose.  22 P. at 126.

---

[4] *Satchell*, *Schader*, *Lawrence* and *Vasquez* are examples of cases where the California Supreme Court recited the formulation but did not consider the issue or rely on the formulation.  *Satchell*, 489 P.2d at 1366; *Schader*, 401 P.2d at 674; *Lawrence*, 76 P. at 897; *Vasquez*, 49 Cal. at 563.

[5] *Washington* and *Gilbert* are examples of cases where the California Supreme Court applied the "in furtherance" requirement to killings committed – not by a co-felon – but by a third party like a police officer or victim.  In those cases the California Supreme Court held that the felony murder rule is not implicated when a crime victim or police officer kills an accomplice because the killing is neither "committed by the defendant [n]or by his accomplice acting in furtherance of their common design."  *Washington*, 402 P.2d at 134; *see also Gilbert*, 408 P.2d at 373–74.

Cavitt identifies no case where the California Supreme Court has ever absolved a robber of liability for a killing his co-felon committed because the killing was not "in furtherance" of the robbery. Before its 2004 decision in this case, the California Supreme Court had never squarely considered the issue. As in *Lancaster*, the state high court's prior cases offered hints and implied that such a robber would not be liable but, as in *Lancaster*, AEDPA requires us to respect the California Supreme Court's decision to ignore its previous intimations when squarely presented with the issue for the first time.

A second line of authority, although older and less frequently invoked, confirms that the State of California's felony murder rule was not settled in 1995. That line of cases apparently dates to *People v. Martin*, 85 P.2d 880, 883 (Cal. 1938), and *People v. Perry*, 234 P. 890, 896 (Cal. 1925), which stated that "if a human being is killed by any one of several persons jointly engaged at the time of such killing in the perpetration of or an attempt to perpetrate the crime of robbery . . . each and all of such persons so jointly engaged . . . are guilty of murder of the first degree."[6]  Most of the

---

[6] For other cases in the *Martin*/*Perry* line, see *People v. Whitehorn*, 383 P.2d 783, 788 (Cal. 1963) (noting that there need not be a "strict causal relation between the felony and the homicide [so long as] the killing and the felony are parts of one continuous transaction."); *People v. Chavez*, 234 P.2d 632, 640 (Cal. 1951) ("Chavez erroneously assumes that to bring a homicide within the terms of section 189 of the Penal code, the killing must have occurred . . . 'in pursuance' of [a felony] . . . . The law of this state has never required proof of a strict causal relationship between the felony and the homicide."); *People v. Bernard*, 169 P.2d 636, 639 (Cal. 1946) ("Even where the killing in perpetration or attempted perpetration of one of the named felonies is unintended and accidental, nevertheless . . . 'the offender is guilty of murder of the first degree by the force of the statute.'" (quoting *People v. Lindley*, 161 P.2d 227, 233 (Cal.

cases in this line are not helpful for the same reason that most of the cases in the *Vasquez* line are not helpful: they repeat their chosen formulation without either analyzing it or applying it in any way that is meaningful here.[7] A few such cases suggested that a killing need not have been "in furtherance" of a felony to constitute felony murder, however. In *Whitehorn*, one man raped a woman while an accomplice sat in the back seat of a car. *See* 383 P.2d at 785. Later, the rapist pinned the woman down while the accomplice strangled her. *See id.* The rapist requested an instruction that

---

1945))); *Lindley*, 161 P.2d at 233 ("Where the murder is committed in perpetration or attempted perpetration of any of the enumerated felonies, the offender 'is guilty of murder of the first degree by force of the statute.'" (quoting *People v. Cabaltero*, 87 P.2d 364, 366 (Cal. Ct. App. 1939))); *People v. Waller*, 96 P.2d 344, 349 (Cal. 1939) ("[I]f a homicide is committed by one of several confederates while engaged in perpetrating the crime of robbery in furtherance of a common purpose, the person or persons engaged with him in the perpetration of the robbery but who did not actually do the killing, are as accountable to the law as though their own hands had intentionally fired the fatal shot . . . ."); *People v. Ross*, 154 Cal. Rptr. 783, 788 (Cal. Ct. App. 1979) ("Any unlawful killing, intentional or otherwise, committed in the perpetration of robbery or burglary for the intended purpose of theft constitutes the crime of first-degree murder."); *People v. Hutchinson*, 61 Cal. Rptr. 868, 872–73 (Cal. Ct. App. 1967) (same as *Waller*); *see also Cabaltero*, 87 P.2d at 368–69 (holding that it did not matter whether a killing was "in furtherance" of a robbery when one co-conspirator shot another).

[7] *Martin* held that a getaway driver was liable for a murder his accomplice committed in the course of a robbery; the murder was undisputably a part of the robbery. *See* 85 P.2d at 881–84. *Perry* held that bank robbers were liable for murder after one of the robbers killed a police officer in a firefight; again there was no question but that the murder was a part of the robbery. *See* 234 P. at 891–92, 896. In *Bernard*, *Waller* and *Hutchinson*, there was similarly no question that the murder had occurred as part of the robbery. *Bernard*, 169 P.2d at 638–39; *Waller*, 96 P.2d at 345–47; *Hutchinson*, 61 Cal. Rptr. at 869–70.

the death must have "ensued in consequence of the forcible rape." *Id.* at 787. The California Supreme Court held that the instruction was properly denied because there need not be a "strict causal relation between the felony and the homicide [so long as] the killing and the felony are parts of one continuous transaction." *Id.* at 788. In *Ross*, two men robbed a 90-year-old victim. According to the defendant, his accomplice then tied the victim to a bed, beat him with a pipe and set the bed on fire. *See* 154 Cal. Rptr. at 786. The defendant, wanting no part, left. The California Court of Appeal held that he was nevertheless liable for felony murder because "the victim was killed during the course of the robbery as a part of a continuing criminal transaction." *Id.* at 788. In *Cabaltero*, one robber shot a lookout whose poor job performance had angered him. *See* 87 P.2d at 366. The other robbers attempted to defend by arguing that the killing "was not in furtherance" of the robbery. *Id.* at 368. The California Court of Appeal held that the defense "is not available . . . to coconspirators in cases such as this, where the killing is done during the perpetration of a robbery in which they were participating." *Id.* In each of these cases, the California Supreme Court or California Court of Appeal upheld a felony murder conviction where the killing was, at least arguably, not done in furtherance of the felony.

Clearly, then, we cannot say the reach of California's felony murder rule was firmly settled in 1995.[8] Indeed, the

---

[8] We reject the state's contention that cases imposing felony-murder liability for accidental killings support its position. As Cavitt points out, an act may be done purposefully and in furtherance of a felony, but accidentally result in death. Cases imposing felony-murder liability in such situations shed no light on whether liability may be imposed for an intentional killing done by a co-felon for a purpose unrelated to the felony.

California Supreme Court acknowledged that there were two valid lines of felony murder authority that might lead to inconsistent results in some cases. In *People v. Pulido*, 936 P.2d 1235 (Cal. 1997), decided two years after Cavitt's crime but before his trial, the California Supreme Court noted that "our formulations of the rule establishing complicity of one robber in another robber's homicidal act have varied in their precise language and perhaps in the exact scope of complicity intended. . . . [But] [u]nder *neither* of the approaches . . . does complicity in a felony murder extend to one who joins the felonious enterprise *after* the killing has been *completed*." *Id.* at 1240 (second and third emphases added).

In sum, Cavitt is unable to identify any California case actually absolving a criminal defendant of felony murder for a killing done by his accomplice during a felony but not in furtherance of the felony. Absent such a case, and in light of the alternative definition used in the *Martin/Perry* line of cases, the cases suggesting that a defendant is liable for a killing unrelated to the predicate felony and *Pulido*, we cannot conclude that the California Supreme Court's adoption of the logical nexus rule was "unexpected and indefensible by reference to existing law." *Lancaster*, 133 S. Ct. at 1792 (alterations omitted). Accordingly, the California Supreme Court's decision "does not warrant disapprobation as an unreasonable application of clearly established federal law." *Id.* at 1791 (citations, quotation marks and alterations omitted).[9]

---

[9] Cavitt argues that the pre-1995 cases in support of his position are both more directly on-point and, on balance, more recently decided. If this case were about predicting how the California Supreme Court might rule in 1995, we might have found this argument persuasive, but that is not the

**III.**

Finally, Cavitt argues that his constitutional rights were violated by the trial court's limiting instruction regarding testimony that Mianta hated her stepmother, and by its instructions on felony murder.

Cavitt's evidentiary arguments are derivative of his *Bouie* claim, so – having rejected that claim – we reject these arguments as well. Four of Mianta's classmates testified that Mianta hated her stepmother and wanted to kill her. The trial court admitted this testimony with a limiting instruction that it could be considered for purposes of considering the robbery-murder and burglary-murder special circumstances but not for purposes of Cavitt's argument that Mianta killed her stepmother for reasons unrelated to the robbery. If, as the California Supreme Court held, Cavitt's defense was not valid, there was no harm in instructing that evidence could not be considered in support of that defense.

Cavitt also challenges the jury instructions. First, he argues that, even if the "logical nexus" test could be retroactively applied to him, the instructions did not require the jury to find such a nexus. He makes the related argument that whether a logical nexus existed was a question of fact that was required to be found by a jury. Accepting Cavitt's premises for the sake of argument, we review for harmless error. *See California v. Roy*, 519 U.S. 2, 6 (1996) (per curiam) (holding that a federal habeas court reviews erroneous or omitted jury instructions for harmless error).

posture here. We are not predicting; we are reviewing the court's actual assessment and articulation of its own jurisprudence, under AEDPA's highly deferential standards.

Under this standard, the test is whether an instructional error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). As the California Supreme Court explained:

> This is not a situation in which Mianta just happened to have shot and killed her lifelong enemy, whom she coincidentally spied through the window of the house during the burglary-robbery. Betty, the murder victim, was the intended target of the burglary-robbery. As part of those felonies, Betty was covered in a sheet, beaten, hog-tied with rope and tape, and left facedown on the bed. Her breathing was labored at the time defendants left. These acts either asphyxiated Betty in themselves or left her unable to resist Mianta's murderous impulses. Thus, on this record, one could not say that the homicide was completely unrelated, other than the mere coincidence of time and place, to the burglary-robbery.

*Cavitt*, 91 P.3d at 233 (citation omitted). We agree that there was a clear logical nexus between Cavitt's crime and Betty's death, so failure to instruct on the required connection could not have prejudiced Cavitt.

## CONCLUSION

Cavitt's *Bouie* claim is not insubstantial. Ultimately, his argument fails because we are not certain that, under

California law at the time of Cavitt's crime, a robber was not liable for a killing his co-felon committed during the robbery for reasons independent of the robbery. Some California cases suggested as much, but no California court had so held. Absent such a case, the existence of contrary authority and AEDPA's highly deferential standard of review compel us to reject Cavitt's argument. Cavitt's other arguments fail as well. The logical nexus test is not unconstitutionally vague as applied here and, because the test was clearly satisfied on the facts here, the failure to instruct explicitly in terms of "nexus" was, at most, harmless error. Accordingly, we affirm.

**AFFIRMED**.