Filed 9/2/22

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C093430 |
| Plaintiff and Respondent, | (Super. Ct. No. 94F01075) |
| v. | |
| ALBERT GARCIA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Stephen P. Acquisto, Judge. Affirmed.

Kyle Gee, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Darren K. Indermill, Supervising Deputy Attorney General, and Melissa Lipon and Ismah Ahmad, Deputy Attorneys General, for Plaintiff and Respondent.

In 1993, defendant Albert Garcia physically assaulted and stole money from an 82-year-old man, who died about an hour later from lethal cardiac arrhythmia, i.e., irregular beating of the heart.  A jury found defendant guilty of first degree murder (Pen. Code, § 187)[1] and robbery (§ 211).  The trial court sentenced him to an aggregate term of 27 years to life in prison, and we affirmed the judgment in an unpublished opinion. (*People v. Garcia* (Oct. 22, 1996, C020253) [nonpub. opn.] (*Garcia I*).)  In affirming defendant's murder conviction, we noted that the prosecution's theory was felony murder, and concluded that the felony-murder rule applied to the facts of this case because there was substantial evidence the robbery, either the physical altercation or the emotional stress, caused the victim's death.  (*Garcia I, supra*, C020253.)

In 2019, after the passage of Senate Bill No. 1437 (2017-2018 Reg. Sess.), which narrowed the class of persons liable for felony murder, defendant petitioned for resentencing under section 1172.6 (former § 1170.95).[2]  Following the appointment of counsel, briefing,[3] and a hearing, the trial court denied the petition in August 2020.  The court found that defendant was ineligible for resentencing as a matter of law because he was the "actual killer," a felony-murder theory that remains valid after the passage of Senate Bill No. 1437.

Defendant timely appealed; after delays for record augments and multiple continuances in the parties' briefing, the case was fully briefed on February 7, 2022, and assigned to the panel as presently constituted on May 5, 2022.

---

[1]  Undesignated statutory references are to the Penal Code.

[2]  Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text.  (Stats. 2022, ch. 58, § 10.)

[3]  In support of its opposition to the petition for resentencing, the People submitted the reporter's transcript from the trial.

On appeal, defendant raises two contentions.  First, he claims the trial court improperly evaluated the validity of his murder conviction under the "actual killer" provision of section 189, subdivision (e)(1), as there is no "actual killer" within the meaning of the revised felony-murder rule when death results from a preexisting medical condition aggravated by the stress of the underlying felony.  Second, defendant argues the trial court erroneously relied upon a sufficiency of the evidence standard in denying his petition for resentencing rather than determining whether the prosecution had met its burden to prove, beyond a reasonable doubt, that he is guilty of murder under current law.

As we next explain, because we disagree with defendant on his first contention, we need not reach his second.  Here defendant was the actual killer; accordingly, we shall affirm the order denying his petition for resentencing.

## BACKGROUND

We summarize the pertinent facts, which are taken from our prior opinion. (*Garcia I, supra*, C020253.)

At about 3:00 p.m. on October 12, 1993, Regina and Todd Nishihara (collectively, the Nishiharas) saw defendant drive by and flagged him down for a ride.  Defendant, who was an acquaintance of the Nishiharas, agreed to give them a ride but explained he had to make a stop on the way.

As defendant pulled into an alley, the Nishiharas saw a "tall, Caucasian man in his mid-thirties."  (*Garcia I, supra*, C020253.)  Defendant drove down the alley and stopped about 75 to 100 feet from the house where 82-year-old Joseph Souza lived.  Defendant asked Mrs. Nishihara to knock on Souza's door, ask for water, and look around the house to see if anyone else was present; she refused.  The Nishiharas got out of the car and began walking out of the alley.  Mrs. Nishihara last saw defendant at the back door of Souza's house.

3

As the Nishiharas left the alley, Mrs. Nishihara saw the "Caucasian man" she had seen earlier approach defendant and ask him for "something." (*Garcia I, supra*, C020253.)

Between 3:00 and 4:00 p.m., another witness saw defendant and Souza on the front porch of Souza's house. Defendant had Souza in a headlock.

At about 3:20 p.m., Souza entered the furniture store located across the street from his home. He told William Seminario and Travis McDaniel that he had just been robbed and asked to use the phone. Souza appeared pale, upset, and frightened. He could hardly walk, his hands were shaking, and his speech was slurred. Although he did not seem coherent, he responded to questions. Souza explained that a "Mexican" had taken his wallet, which contained $15 to $30, and had knocked him out. At 3:25 p.m., Seminario called 911 and handed the phone to Souza, who told the 911 dispatcher that a Mexican, 25 to 30 years old, wearing a white T-shirt, hit him and took his money.

Souza left the furniture store and headed home because he had left the house unlocked; Seminario and McDaniel accompanied him. Souza's shoulder was covered with dry leaves and debris, and he had a large bump on his head. Souza became more incoherent; his eyes were glazed and his movements jerky. He sat down at the bottom of his stairs and gave more details about his assailant: a Mexican male in a white T-shirt came to his door asking for water while a second man stood in the alley; they had been to his house before asking for water. Souza refused to give them water and one of the men hit him on the back of his head. When a police officer arrived, Souza explained that his assailant was a Hispanic male, five feet seven inches tall, one hundred thirty-five pounds, with black hair and wearing a white T-shirt.

When Souza's condition deteriorated and he became unconscious, Seminario called an ambulance, which arrived at about 3:40 p.m. Resuscitative efforts were unsuccessful, and Souza was pronounced dead at 4:15 p.m. The immediate cause of death was lethal cardiac arrhythmia, or irregular beating of the heart. Due to Souza's

4

cardiovascular disease, either the stress of having been robbed or the physical altercation had caused the lethal arrhythmia.[4]

The next day, Mrs. Nishihara told a police officer about what she had observed in the alley, and defendant was subsequently taken into custody. Upon questioning, defendant recalled picking up the Nishiharas but denied going into the alley; he claimed that he dropped the Nishiharas off somewhere else.

## DISCUSSION

### I

*Relevant Legal Principles*

A. *Felony-Murder Liability Prior to Senate Bill No. 1437*

Section 189, adopted in 1872, codified the felony-murder rule, under which a killing in the course of a statutorily enumerated felony (e.g., robbery) constituted first degree murder. (*People v. Dillon* (1983) 34 Cal.3d 441, 465, 467 & fn. 14, 471-472.) "For felony murder, the required mental state is the specific intent to commit the underlying felony." (*People v. Booker* (2011) 51 Cal.4th 141, 175.)

The "felony-murder rule covers 'a variety of unintended homicides resulting from reckless behavior, or ordinary negligence, or pure accident . . . .' " (*People v. Billa* (2003) 31 Cal.4th 1064, 1068.) " ' "The purpose of the . . . rule is to deter felons from killing negligently or accidentally by holding them strictly responsible for killings they commit." [Citation.] The Legislature has said in effect that this deterrent purpose

---

[4] The only medical testimony presented at trial came from the forensic pathologist who performed the autopsy, Dr. Gregory Schmunk. He testified that Souza suffered from cardiovascular disease, including extensive hardening of the arteries and high blood pressure. Dr. Schmunk explained that Souza's heart arrhythmia was due to his cardiovascular disease, and opined that the stress from either the robbery or the assault could have caused the lethal cardiac arrhythmia, which was the immediate cause of death. Dr. Schmunk concluded that the lethal cardiac arrhythmia occurred "as a direct consequence of the altercation, both the physical and emotional component."

outweighs the normal legislative policy of examining the individual state of mind of each person causing an unlawful killing to determine whether the killing was with or without malice, deliberate or accidental, and calibrating our treatment of the person accordingly. Once a person perpetrates or attempts to perpetrate one of the enumerated felonies, then in the judgment of the Legislature, he is no longer entitled to such fine judicial calibration, but will be deemed guilty of first degree murder for any homicide committed in the course thereof.' " (*People v. Farley* (2009) 46 Cal.4th 1053, 1121.)

Liability for first degree murder based on a felony-murder theory is proper when the defendant kills during the commission of a robbery, but the prosecution must establish that the defendant intended to steal the victim's property either before or during the fatal assault. (*People v. Lewis* (2001) 25 Cal.4th 610, 642.)

While the law does not require a strict causal or temporal relationship between the felony and the murder (*People v. Prince* (2007) 40 Cal.4th 1179, 1259), there must be some connection between the two. As our Supreme Court has explained: " '[T]he felony-murder rule requires both a *causal* relationship and a *temporal* relationship between the underlying felony and the act resulting in death.' [Citation.] The causal relationship is established by a 'logical nexus' between the felony and the homicidal act, and '[t]he temporal relationship is established by proof the felony and the homicidal act were part of one continuous transaction.' " (*People v. Wilkins* (2013) 56 Cal.4th 333, 346-347.)

Proximate cause is a " 'universal factor common to all legal liability,' " including criminal culpability. (*People v. Harrison* (1959) 176 Cal.App.2d 330, 333, disapproved on other grounds in *People v. Whitehorn* (1963) 60 Cal.2d 256, 264 and *People v. Washington* (1965) 62 Cal.2d 777, 783.) California courts have long held "that there may be multiple proximate causes of a homicide, even where there is only one known actual or direct cause of death." (*People v. Sanchez* (2001) 26 Cal.4th 834, 846.) For example, " ' "[w]hen the conduct of two or more persons *contributes concurrently as the proximate*

6

*cause of the death*, the conduct of each is a proximate cause of the death if that conduct was also a substantial factor contributing to the result. A cause is concurrent if it was operative at the time of the death and acted with another cause to produce the death." ' " (*Id.* at p. 847; see also *People v. Jennings* (2010) 50 Cal.4th 616, 643 [a defendant may be criminally liable for a result directly caused by his or her act, even though there is another contributing cause].) " 'To be considered the proximate cause of the victim's death, the defendant's act must have been a substantial factor contributing to the result, rather than insignificant or merely theoretical.' " (*Jennings*, at p. 643.)

A cause of death is an act or omission that sets in motion a chain of events that produces as a direct, natural and probable consequence of the act or omission the death and without which the death would not occur. (*People v. Dawson* (2009) 172 Cal.App.4th 1073, 1094; see also CALJIC No. 3.40.) When there is more than one contributing cause of death in a murder case, the law is clear: "[A]s long as the jury finds that without the criminal act the death would not have occurred when it did, it need not determine which of the concurrent causes was the principal or primary cause of death. Rather, it is required [only] that the cause was a substantial factor contributing to the result." (*People v. Catlin* (2001) 26 Cal.4th 81, 155 (*Catlin*).) The "substantial factor" standard addresses situations in which there are independent concurrent causes of a death. (*People v. Jennings, supra*, 50 Cal.4th at p. 644.)

"A victim's predisposing physical condition will not preclude a felony-murder conviction even when the condition is a substantial factor in causing the death of the victim, so long as it is not the only substantial factor. The death only need be a direct consequence of the felony; it need not be a natural or probable consequence of the felony." (Levenson & Ricciardulli, Cal. Criminal Law (The Rutter Group 2021) § 5:21, fns. omitted; see *Catlin, supra*, 26 Cal.4th at p. 155 [" 'So long as a victim's predisposing physical condition, regardless of its cause, is not the *only* substantial factor bringing about his death, that condition . . . in no way destroys the [defendant's] criminal

7

responsibility for the death' "].)  For example, the felony-murder rule is applicable when there is "substantial evidence to prove that a robbery caused a victim's fatal heart attack." (*People v. Hernandez* (1985) 169 Cal.App.3d 282, 287 (*Hernandez*); *People v. Stamp* (1969) 2 Cal.App.3d 203, 209-211 (*Stamp*).)

It is irrelevant that a normally healthy individual might not have died as long as the victim's preexisting medical condition is not the *only* cause of the death.  (*People v. Wattier* (1996) 51 Cal.App.4th 948, 953.)  "As the courts have made clear, a defendant whose infliction of physical injury upon another is a cause of that person's death is guilty of unlawful homicide even if the injury was not the only cause of death, and even if the victim was in a weakened state due to a preexisting condition."  (*People v. Taylor* (2004) 119 Cal.App.4th 628, 641.)

B.  *Senate Bill No. 1437's Substantive Changes to Felony-Murder Liability*

As previously indicated, under the felony-murder rule as it existed prior to Senate Bill No. 1437, a defendant who committed a statutorily enumerated felony such as robbery could be convicted of murder for a killing during the felony without further examination of their mental state.  (*People v. Chun* (2009) 45 Cal.4th 1172, 1182.)

"Effective January 1, 2019, the Legislature passed Senate Bill [No.] 1437 'to amend the felony murder rule . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 959.)  Senate Bill No. 1437 accomplished this purpose by amending section 189.  (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).)

As relevant here, Senate Bill No. 1437 limited the class of persons liable for felony murder by adding section 189, subdivision (e).  Under current law,  "[a] participant in the perpetration or attempted perpetration of [certain enumerated felonies, including robbery] in which a death occurs is liable for murder only if one of the

8

following is proven:  [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."  (§ 189, subd. (e)(1)-(3).)  In adding this provision to section 189, the Legislature narrowed the scope of liability under the felony-murder rule to protect the "bedrock principle of the law and of equity that a person should be punished for his or her actions according to his or her own level of individual culpability."  (Stats. 2018, ch. 1015, § 1, subd. (d); see *People v. Duchine* (2021) 60 Cal.App.5th 798, 808 [explaining that the legislative history reflects that Senate Bill No. 1437 was adopted to, among other things, address the unfairness in disproportionately sentencing under the felony-murder rule persons who did not perpetrate a homicide and lacked the mens rea and culpability of the actual killer].)

In addition to these amendments, Senate Bill No. 1437 added section 1172.6 (former § 1170.95), which provides a procedure whereby persons convicted of murder under a now-invalid theory may petition to vacate their conviction.  (§ 1172.6, subd. (a); *Gentile, supra*, 10 Cal.5th at p. 843.)  As relevant here, a defendant is eligible for relief under section 1172.6 if the following three conditions are satisfied:  (1) he was prosecuted under a theory of felony-murder, (2) he was convicted of murder, and (3) he could not presently be convicted of murder because of the statutory changes to section 189 effectuated by Senate Bill No. 1437.  (§ 1172.6, subd. (a).)

When, as here, the trial court determines that the petition for resentencing establishes a prima facie case for relief, the court must issue an order to show cause and then conduct a hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts.  (§ 1172.6, subds. (c), (d)(1).)  At the hearing, the prosecution bears the burden to prove beyond a reasonable doubt that the

9

defendant is guilty of murder under current law (e.g., felony murder as amended by the changes to section 189). (§ 1172.6, subd. (d)(3).) The court may consider evidence previously admitted at trial that is admissible under current law, and the parties may offer new or additional evidence. (*Ibid.*) The trial court, acting as an independent factfinder, must determine, beyond a reasonable doubt, whether the defendant is guilty of murder under a theory that remains valid after Senate Bill No. 1437. (*People v. Garrison* (2021) 73 Cal.App.5th 735, 745 (*Garrison*).)

Following the passage of Senate Bill No. 1437, the Governor signed Senate Bill No. 775 (2020-2021 Reg. Sess.), which went into effect on January 1, 2022. (Cal. Const., art. IV, § 8, subd. (c).) As particularly relevant here, Senate Bill No. 775 "[r]eaffirms that the proper burden of proof at a [section 1172.6] resentencing hearing . . . is proof beyond a reasonable doubt," and that a finding there is substantial evidence to support a conviction is insufficient to meet this burden. (Stats. 2021, ch. 551, §§ 1-2; see 1172.6, subd. (d)(3).) Because the trial court's order denying defendant's petition for resentencing is not yet final, he is entitled to the benefit of the amendments to section 1172.6 effectuated by Senate Bill No. 775. (*People v. Porter* (2022) 73 Cal.App.5th 644, 652.)[5]

---

[5] Senate Bill No. 775 became effective after the trial court denied defendant's petition for resentencing. Prior to the passage of Senate Bill No. 775, there was a split in authority as to whether the trial court should determine if the record contains substantial evidence supporting a murder conviction under a now-valid theory of murder or whether the trial court should independently review the record to determine if the prosecution proved beyond a reasonable doubt defendant's guilt of murder under a now-valid theory. (See *People v. Clements* (2022) 75 Cal.App.5th 276, 293 [collecting cases].) Because defendant is entitled to the benefit of the amendments to section 1172.6 effectuated by Senate Bill No. 775, we have summarized the *current* law.

II

*Analysis*

A. *Felony-Murder Liability Under An "Actual Killer" Theory*

Defendant contends the trial court improperly evaluated the validity of his murder conviction under the "actual killer" provision of section 189, subdivision (e)(1), as there is no "actual killer" within the meaning of the revised felony-murder rule when death results from a preexisting medical condition aggravated by the stress of the underlying felony. He argues the trial court should have evaluated the validity of his murder conviction under section 189, subdivision (e)(2) and (3) because a robber should not be deemed an "actual killer" under section 189, subdivision (e)(1) when an unintended, accidental, and unforeseeable death occurs. He concludes that under current law, he cannot be liable for murder under a felony-murder theory unless the prosecution proves beyond a reasonable doubt that, although not the "actual killer," he had the intent to kill (§ 189, subd. (e)(2)) or was a major participant in the robbery and acted with reckless indifference to human life (§ 189, subd. (e)(3)). In making this argument, defendant insists that imposing felony-murder liability where there was an unintended or accidental death, unaccompanied by any measure of individual culpability beyond the intent to commit the underlying felony, violates the Eighth Amendment. We reject this claim.

Although defendant invokes the Eighth Amendment in support of his claim, we begin our analysis by noting that his argument finds no support in either the language of section 189, subdivision (e) or the Legislature's expressed intent in enacting this provision. As amended by Senate Bill No. 1437, the text of section 189 provides no additional or heightened mental state requirement for the "actual killer" prosecuted under a felony-murder theory; it requires only that "[t]he person was the actual killer." (§ 189, subd. (e)(1).) Additionally, there is nothing in the language of Senate Bill No. 1437 suggesting that the Legislature intended to modify the long-standing rules regarding felony-murder liability in circumstances involving concurrent causes of death, including

11

situations in which the victim's preexisting medical condition is a substantial factor in causing the death. By contrast, the new section 189, subdivision (e) requires that accomplices in an enumerated felony harbor a more culpable mental state than was previously required. Under current law, a participant in an enumerated felony who is not the actual killer is now only subject to felony-murder liability if he aided and abetted the actual killer in the commission of the murder with the intent to kill or was a major participant in the underlying felony and acted with reckless indifference to human life. (§ 189, subd. (e)(2), (3).) Among the express legislative findings in Senate Bill No. 1437 is that: "It is necessary to amend the felony murder rule . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) With respect to felony-murder liability, Senate Bill No. 1437 specifically limits the liability of accomplices but contains no expressed intent to modify the felony-murder rule's application to a perpetrator whose acts were a concurrent cause of the death. (Stats. 2018, ch. 1015, §§ 1-3; see *Gentile, supra*, 10 Cal.5th at pp. 842-844; § 189, subd. (e).) Indeed, the Legislative Counsel's Digest labels Senate Bill No. 1437 as, "Accomplice liability for felony murder." (See Legis. Counsel's Dig., Sen. Bill No. 1437 (2017-2018 Reg. Sess.).) In our view, the Legislature's purpose in revising the law as it relates to felony-murder liability was to ensure proportionate punishment for accomplices in the felony-murder context, and that the term "actual killer" is meant to distinguish the person who actually caused the victim's death, including in circumstances where two or more persons participated in the felony.

We decline to adopt the interpretation of section 189, subdivision (e) urged by defendant, as it is not supported by the clear, unambiguous language of the statute or the intent expressed by the Legislature in adopting Senate Bill No. 1437. (See *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 743 [" ' "When the [statutory] language is clear

12

and there is no uncertainty as to the legislative intent, we look no further and simply enforce the statute according to its terms" ' "]; *People v. Cornett* (2012) 53 Cal.4th 1261, 1265 [our fundamental task in reviewing questions of statutory interpretation is to determine the Legislature's intent so as to effectuate the law's purpose; the plain meaning controls if there is no ambiguity in the statutory language].)  Had the Legislature, as defendant suggests, intended section 189, subdivision (e) to mean that there is no "actual killer" for purposes of felony-murder liability where death resulted from a preexisting medical condition aggravated by the stress of the underlying felony, it could and would have said so in clear and certain terms.[6]  This is particularly true given that long-standing case law permits felony-murder liability even when a preexisting medical condition is a substantial factor in causing the death of the victim, as long as it is not the only substantial factor.  (*Hernandez, supra*, 169 Cal.App.3d at p. 287 [heart attack during robbery]; *Stamp, supra*, 2 Cal.App.3d at pp. 209-211 [same].)  Lawmakers are presumed to be aware of judicial decisions already in existence, and to have enacted or amended a statute in light thereof.  (*People v. Scott* (2014) 58 Cal.4th 1415, 1424.)  To adopt defendant's position would require us to change the scope of section 189, subdivision (e) by reading into it language it does not contain.  We cannot and will not do that.  (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 253 [courts may not rewrite the statute to conform to an assumed intention that does not appear in its language]; *Manufacturers Life Ins. Co. v. Superior Court* (1995) 10 Cal.4th 257, 274 [in construing a statute, courts do not insert what has been omitted or omit what has been inserted].)  Moreover,

---

[6]  Indeed, in enacting Senate Bill No. 1437, the Legislature provided an exception to the requirements set forth in subdivision (e):  "Subdivision (e) does not apply to a defendant when the victim is a peace officer who was killed while in the course of the peace officer's duties, where the defendant knew or reasonably should have known that the victim was a peace officer engaged in the performance of the peace officer's duties." (§ 189, subd. (f).)

13

defendant's position is contrary to the primary purpose of the felony-murder rule, which is " 'to deter felons from killing negligently or accidentally by holding them strictly responsible for killings they commit.' " (*People v. Billa, supra*, 31 Cal.4th at p. 1070; see also *People v. Farley, supra*, 46 Cal.4th at p. 1121.)

We find no merit in defendant's Eighth Amendment argument, which relies on a series of United States Supreme Court cases addressing whether a participant in a felony murder who was *not* the actual killer and did not intend that a killing take place can be subject to the death penalty. (See *Tison v. Arizona* (1987) 481 U.S. 137; *Enmund v. Florida* (1982) 458 U.S. 782.) Because these cases are inapposite, we need not discuss them. Instead, we simply note that our Supreme Court has explained that "in the context of first degree felony murder, [it has] not conditioned capital punishment upon an intent to kill for actual killers" or a finding of " 'reckless indifference to human life' for actual killers lacking an intent to kill." (*People v. Contreras* (2013) 58 Cal.4th 123, 163-165 ["[p]roof that a defendant who is guilty of felony murder was the actual killer of the victim—by itself—establishes the degree of culpability required to impose the death penalty"].) This is not a capital case, and, as we explain below, the record of conviction unequivocally establishes that defendant was the "actual killer." He was the sole perpetrator of a robbery where a death occurred as a direct consequence of his actions. For the reasons we have discussed, we reject defendant's contention that the term "actual killer" should be interpreted as only applying to those persons with intent to kill or also identified as a major participant in the felony who acted with reckless indifference to human life.

In sum, we conclude the trial court properly evaluated defendant's petition for resentencing under the "actual killer" provision of section 189, subdivision (e)(1) to determine whether he was guilty of murder under a theory that remains valid after Senate Bill No. 1437.

*People v. Garcia* (2020) 46 Cal.App.5th 123, on which defendant relies in his reply brief, does not support the conclusion that defendant is not the "actual killer" within the meaning of section 189, subdivision (e)(1). The *Garcia* court concluded that simply being a proximate cause of the victim's death--for example, handing the murder weapon to the individual who directly inflicts the fatal blow--would generally not be sufficient to be considered the "actual killer" for purposes of the felony-murder special circumstance under section 190.2, subdivision (b). (See *Garcia*, at pp. 151-153.) In *Garcia*, the victim died due to asphyxiation after his mouth was covered with duct tape during a home-invasion robbery involving two perpetrators. (*Id*. at p. 136.) In closing argument, the prosecutor maintained that the robbery-murder special circumstance (§ 190.2, subds. (a)(17), (b)) could be found true as to one of the defendants on the theory that he was the "actual killer" because he gave the duct tape to the other defendant who taped the victim's mouth closed. (*Garcia*, at p. 149.) The jury was instructed with CALCRIM No. 730 that the special circumstance could be found true if the defendant " 'did an act that caused the death of another person.' " (*Garcia*, at pp. 149-150.) The *Garcia* court reversed, finding that the prosecutor relied on an improper theory of actual killer liability, as the meaning of the term "actual killer" under section 190.2, subdivision (b) is literal: "The actual killer is the person who *personally kills* the victim, whether by shooting, stabbing, or—in this case—taping his mouth closed, resulting in death by asphyxiation." (*Garcia*, at pp. 152, 156-157, italics added.) In reversing, the court reasoned that the CALCRIM No. 730 instruction was erroneous because it "allowed the jury to find the special circumstance true if it determined that [the defendant] 'caused' [the victim's] death even if it did not find beyond a reasonable doubt that [the defendant] participated in the taping" of the victim's face--that is, the jury could have found the defendant guilty solely for handing his co-perpetrator the tape. (*Garcia*, at p. 155.)

Even assuming, as defendant argues, the Legislature intended the term "actual killer" to have the same meaning in both section 190.2, subdivision (b) and section 189,

subdivision (e)(1)--that is, the "actual killer" is the person who "personally" killed the victim[7]--reversal is not required.  As we discuss below, the record of conviction demonstrates that defendant, acting alone, committed the acts against Souza that directly contributed to Souza's lethal cardiac arrhythmia.  In short, because defendant's acts in robbing Souza (including assault) were a substantial factor in bringing about Souza's death, defendant "personally killed" Souza and was the "actual killer" within the meaning of section 189, subdivision (e)(1).[8]  This conclusion is not undermined by the fact that Souza's preexisting heart condition contributed to his death.  (See *Catlin, supra*,

---

[7] Section 190.2, subdivision (b) specifies that "an actual killer . . . need not have had any intent to kill at the time of the commission of the offense which is the basis of the special circumstance in order to suffer death or confinement in the state prison for life without the possibility of parole."  Thus, "[a] felony-murder special circumstance is established even absent intent to kill, premeditation, or deliberation, if there is proof beyond a reasonable doubt that the defendant *personally killed* the victim in the commission or attempted commission of, and in furtherance of, one of the felonies enumerated in subdivision (a)(17) of section 190.2." (*People v. Jennings* (1988) 46 Cal.3d 963, 979, italics added.)  In addition to *Garcia*, two recent appellate court opinions, including an opinion from this court, have also concluded that the term "actual killer" as used in the revised felony-murder rule of section 189, subdivision (e)(1) refers to someone who "personally killed" the victim, not someone who merely committed an act that proximately caused the victim's death.  (See *People v. Lopez* (2022) 78 Cal.App.5th 1, 4, 16-19 [reviewing the legislative history of Senate Bill No. 1437 and concluding that the term "actual killer" has the same meaning in both § 190.2, subd. (b) and § 189, subd. (e)(1)]; *People v. Vang* (2022) 82 Cal.App.5th 64, 83 (*Vang*) [same].)

[8] We recognize that " '[p]roximately causing and personally inflicting harm are two different things.' " (*People v. Bland* (2002) 28 Cal.4th 313, 336.)  " '[T]he phrase "personally inflicts" means that someone "in person" . . . , that is, directly and not through an intermediary, "cause[s] something (damaging or painful) to be endured." ' " (*People v. Ollo* (2021) 11 Cal.5th 682, 688; see *People v. Rodriguez* (1999) 69 Cal.App.4th 341, 349 ["To 'personally inflict' injury, the actor must do more than take some direct action which proximately causes injury.  The defendant must directly, personally, himself inflict the injury"].)

26 Cal.4th at p. 155; *Hernandez, supra*, 169 Cal.App.3d at p. 287; *Stamp, supra*, 2 Cal.App.3d at pp. 209-211.)

Nor is our conclusion undermined by *People v. Lopez, supra*, 78 Cal.App.5th 1 or *Vang, supra*, 82 Cal.App.5th 64, two recent appellate court opinions relied upon by defendant for the first time at oral argument. The evidence in those cases did not show (as the evidence did in this case) that the defendant personally committed the act(s) that directly resulted in the victim's death. In *Lopez*, the victim was bludgeoned to death during a home-invasion robbery involving two perpetrators, but there was no direct evidence that the defendant was the person who bludgeoned the victim. (*Lopez*, at pp. 5-10, 19.) Similarly, in *Vang*, there was no direct evidence that the defendant personally committed the act that killed his wife. There, the defendant, who had a long history of domestic violence, got into an argument with his wife and followed her after she fled in a car. (*Vang*, at pp. 69-70.) He eventually forced her to stop and coerced her into his vehicle through force or fear. (*Id*. at p. 69.) As he was driving away, she opened the door and jumped out of the vehicle; the fall from the vehicle resulted in her death. (*Ibid*.)

B. *Proper Standard of Proof*

Defendant contends the trial court erroneously relied on a sufficiency of the evidence standard in denying his petition for resentencing rather than determining whether the prosecution had met its burden of proving, beyond a reasonable doubt, that he is guilty of murder under current law. While the Attorney General insists that the trial court applied the correct standard of proof, we need not decide this issue. Even if we assume error, the error was harmless under any standard because the record of conviction establishes that defendant was the "actual killer," a theory of felony-murder liability that remains valid after Senate Bill No. 1437. (See *Garrison, supra*, 73 Cal.App.5th at pp. 745-747 [finding no prejudice under either standard of harmless error review because,

17

even assuming the court applied the incorrect standard of proof, the defendant was the "actual killer" and therefore ineligible for resentencing as a matter of law].)[9]

Here, defendant was charged with first degree murder and robbery. He was prosecuted solely under the theory that he was the actual killer and committed the robbery alone. At the close of trial, the jury was instructed on four theories of murder liability: (1) deliberate and premeditated first degree murder (CALJIC No. 8.20); (2) unpremeditated second degree murder (CALJIC No. 8.30); (3) second degree murder— killing resulting from an unlawful act dangerous to life (CALJIC No. 8.31); and (4) felony murder (CALJIC Nos. 8.10, 8.21). The jury was also instructed on causation (CALJIC No. 3.40) and proximate cause (CALJIC No. 8.55) in the context of homicide.[10] In closing argument, the prosecutor focused on felony-murder liability; she specifically argued that defendant was liable for murder under this theory because Souza

---

[9] We find no merit in defendant's undeveloped contention that the trial court's application of the improper standard of proof was a "structural defect," which is not amenable to harmless error review and requires automatic reversal. (See *Garrison, supra*, 73 Cal.App.5th at pp. 745-747 [rejecting argument that applying the wrong standard of proof at the § 1172.6, subd. (d)(3) hearing is structural error].) At oral argument, defense counsel did not raise this issue and did not dispute this court's observation that the trial court's application of the incorrect standard of proof would be harmless error if defendant was the "actual killer" and therefore ineligible for resentencing under the relevant statutory provision as a matter of law.

[10] Defendant was not prosecuted under the natural and probable consequences doctrine, a theory of liability by which an aider and abettor who intends to aid one offense (target offense) can be convicted of another offense (nontarget offense) that is the natural and probable consequence of the target offense. (*People v. Smith* (2014) 60 Cal.4th 603, 611.) Nor was the jury instructed on that doctrine or aiding and abetting, presumably because defendant was the sole perpetrator of the robbery. For purposes of second degree murder, the jury was instructed that malice is implied if the killing was the natural consequence of an intentional act by defendant that was dangerous to human life. But that is not the same as the doctrine under which an aider and abettor can be held liable for a nontarget offense that was a natural and probable consequence of the target offense. (See *Gentile, supra*, 10 Cal.5th at p. 843.)

18

died as a direct result of the traumatic stress from the robbery, including the assault. The jury found defendant guilty of first degree murder and robbery, i.e., felony murder. In support of his petition for resentencing, defendant did not seek to present any new or additional evidence. In denying the petition for resentencing, the trial court found, and defendant does not dispute on appeal, that the evidence adduced at trial showed as follows: defendant put Souza in a headlock and hit him, knocking him unconscious; defendant stole Souza's wallet, which contained $15 to $30; Souza regained consciousness shortly thereafter but died about an hour later after he lost consciousness again; and the doctor who performed the autopsy concluded that Souza died from a lethal cardiac arrhythmia (i.e., irregular beating of the heart), and specifically opined that the death was caused by the stress from the robbery, including the assault.

In short, because the record of conviction unequivocally establishes that defendant was the "actual killer," the trial court's purported failure to apply the proper standard of proof in denying defendant's petition for resentencing was harmless. Defendant was convicted on a murder theory that remains valid after Senate Bill No. 1437. As a matter of law, resentencing relief under section 1172.6 is not available to an "actual killer." (§§ 1172.6, subd. (a)(3), 189, subd. (e)(1); see *Garrison, supra*, 73 Cal.App.5th at pp. 743-744; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58; *People v. Tarkington* (2020) 49 Cal.App.5th 892, 899, abrogated on another point by *People v. Lewis, supra*, 11 Cal.5th at pp. 961-962; see also *In re White* (2019) 34 Cal.App.5th 933, 937, fn. 2 [the amendments to § 189 changed the felony-murder rules for participants in a felony murder who did not actually kill the victim].)

# DISPOSITION

The order denying defendant's petition for resentencing is affirmed.

/s/
Duarte, J.

We concur:

/s/
Robie, Acting P. J.

/s/
Hoch, J.